[Cite as *In re C.M.*, 2015-Ohio-3971.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: C.M.            :        APPEAL NOS. C-150365

                                                C-150396

                         :        TRIAL NO. F04-2236Z

                         :                *O P I N I O N.*

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Judgment Entered

Date of Judgment Entry on Appeal: September 30, 2015

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Ernest W. Lee, Jr.,* Assistant Prosecuting Attorney, for Appellant Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Attorney Guardian Ad Litem, for C.M.,

*Elizabeth Powers*, for Appellee Mother.

Please note: this case has been removed from the accelerated calendar.

Per Curiam.

{¶1}   Appellants the Hamilton County Department of Job and Family Services ("HCJFS") and the attorney guardian ad litem ("GAL") for the child, C.M., appeal the juvenile court's judgment denying HCJFS's motion for permanent custody and awarding legal custody of C.M. to the mother.  C.M.'s mother had permanently lost custody of C.M.'s siblings just eight months earlier, so she was required to prove by clear and convincing evidence that she could provide a legally secure permanent placement and adequate care for C.M.'s health, welfare, and safety.  Because she failed to meet that burden, we reverse the judgment of the juvenile court and enter judgment in favor of HCJFS on its motion for permanent custody.

### *Background*

{¶2}   C.M. is now almost four years old.  C.M.'s mother has two other children who are 11 and 15 years old, and her involvement with the juvenile court began several years before C.M. was born.

{¶3}   In January 2009, following the mother's admission that she had beaten the oldest sibling with a belt and caused injury, HCJFS obtained emergency custody of the children.  The mother was charged with child endangering and was convicted of an attempt.  The oldest sibling was adjudicated abused and dependent and the other sibling was adjudicated dependent.

{¶4}   The mother engaged in parenting, anger-management, and counseling services and, in the fall of 2009, was granted unsupervised weekend visitation with the children.  But then she and a boyfriend got into a physical altercation in front of the children.  She and her boyfriend were arrested, and she was convicted of

disorderly conduct. As a result, her visits with the children had to be supervised at the Family Nurturing Center ("FNC").

{¶5} After unsupervised visitation resumed in January 2010, C.M.'s siblings witnessed another violent encounter while at their maternal grandmother's home. They saw their maternal uncle stab their mother's boyfriend several times. So visitation was again restricted to supervised status at the FNC.

{¶6} In March 2011, HCJFS filed for permanent custody of C.M.'s older siblings. Evidentiary hearings on the motion began in September 2011 and continued through January 2012.

{¶7} Meanwhile, C.M. was born in October 2011, and within a few days, HCJFS obtained emergency custody of C.M. In December 2011, C.M. was adjudicated abused and dependent and was placed in HCJFS's temporary custody. In October 2012, HCJFS moved for permanent custody of C.M.

{¶8} In December 2012, a magistrate recommended the award of permanent custody of C.M.'s siblings to HCJFS. Objections were filed. In the meantime, evidentiary hearings were conducted on the permanent-custody motion pertaining to C.M.

{¶9} In March 2014, with respect to the permanent-custody matter involving C.M.'s siblings, the juvenile court granted a motion to introduce new evidence because so much time had passed following the last evidentiary hearing in early 2012. The court ordered that the new evidence be heard in May 2014. In April 2014, HCJFS asked the court to join C.M.'s pending permanent-custody motion with the proceedings on C.M.'s siblings, but the court refused.

{¶10} On May 28 and 29, 2014, the juvenile court received additional testimony and evidence with respect to the objections to the magistrate's decision in the matter of C.M.'s siblings. In September 2014, the court overruled the objections and adopted the magistrate's decision granting permanent custody of C.M.'s siblings to HCJFS. This court affirmed the judgment in *In re T.M. and J.M.,* 1st Dist. Hamilton Nos. C-140528, C-140532 and C-140542 (Dec. 24, 2014).

{¶11} In January 2015, a few months after the juvenile court had granted permanent custody of C.M.'s siblings to HCJFS, a magistrate recommended denying permanent custody of C.M. to HCJFS. On May 28, 2015, the juvenile court overruled the objections of HCJFS and the GAL and adopted the magistrate's decision. HCJFS and the GAL appeal.

### The Appeals by HCJFS and the GAL

{¶12} In the first three assignments of error by HCJFS and in the two assignments of error by the GAL, they challenge the juvenile court's denial of permanent custody to the agency as being against the weight and sufficiency of the evidence. Specifically, they contend that the court failed to correctly apply the statutory framework set forth in R.C. 2151.414.

{¶13} R.C. 2151.414, the statute governing motions for permanent custody, has been amended recently. Therefore, we will apply the version that was in effect on October 2, 2012, the date that the motion for permanent custody was filed. *See In re C.E.1,* 1st Dist. Hamilton No. C-140674, 2015 Ohio App. LEXIS 1170 (Mar. 20, 2015).

*Former R.C. 2151.414(D)(2)*

{¶14} If the following factors exist under former R.C. 2151.414(D)(2), permanent custody is determined to be in the best interest of the child, and the juvenile court must commit the child to the permanent custody of the agency: (a) the court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the parents within a reasonable time or should not be placed with either parent; (b) the child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody; (c) the child does not meet the requirements for a planned permanent living arrangement; and (d) no relative or other interested person has filed or been identified in a motion for legal custody of the child.

{¶15} In this case, there was no dispute that the latter three factors had been met. C.M. had been in HCJFS custody for more than three and a half years and no longer qualified for temporary custody; C.M. did not qualify for a planned permanent living arrangement; and there was no other motion for legal custody of C.M. *See* former R.C. 2151.414(D)(2)(b)-(d). Thus, the remaining question is whether the first factor had been met.

{¶16} That question turns on former R.C. 2151.414(E). If at least one factor under division (E) exists, permanent custody must be granted to the agency. Former R.C. 2151.414(D)(2).

*Former R.C. 2151.414(E)(11) and the Mother's Burden of Proof*

{¶17} Under former R.C. 2151.414(E)(11), the grant of permanent custody for C.M.'s siblings triggered an automatic finding that C.M. could not be placed with the mother within a reasonable time or should not be placed with the mother, unless the

mother proved by clear and convincing evidence that, notwithstanding the prior termination, she could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.M. *See* former R.C. 2151.414(E)(11).

{¶18} In this case, there is no dispute that C.M.'s mother had permanently lost custody of two other children. Therefore, under former R.C. 2151.414(E)(11), it was the mother's burden to show that she could provide a legally secure permanent placement for C.M. and provide adequate care for the child's health, welfare, and safety. *See In re E.S.*, 1st Dist. Hamilton Nos. C-100725 and C-100747, 2011-Ohio-586, ¶ 7.

{¶19} The juvenile court recognized that the burden was on C.M.'s mother to demonstrate her ability to provide for C.M. And the court noted that the termination of parental rights with respect to C.M.'s siblings presented a presumption that permanent custody was in C.M.'s best interests. The court stated:

> It appears inconsistent if there are different permanent custody decisions concerning children in the same family. A permanent commitment of one or more children in a family is persuasive and must be considered as an important factor for subsequent children appearing before the court. However, it is not mandatory for the court to also commit all other children in a family to permanent custody. Each child and circumstance must be considered independently.

{¶20} In denying the permanent-custody motion by HCJFS, the juvenile court found that C.M.'s mother had proved that she could provide a secure home and

adequate care for C.M.'s health, welfare, and safety. The court's finding was based on the mother's testimony from the June 2014 hearing before the magistrate:

> Since the HCDJFS had already provided services to the mother and saw little if any internalization or improvement, the HCDJFS did not truly provide any further services to the mother. The mother reports that she obtained counselling on her own and has completed it. She feels that she needs no further counselling.
>
> * * *
>
> The mother testified that she has improved on her own without new services, that she has separated herself from detrimental associates, that she has maintained stable housing for a fairly long period, that the [one] bedroom apartment is clean and appropriate for placement of the child, that she has no incidents of anger displays or new criminal charges for a long time, and that she is committed to the child as [the] mother. The mother believes that even without services she has been able to change her life, remedy the circumstances that led to the child's removal, and is now able to safely care for her child.

{¶21} The court's reliance on this testimony, however, is problematic given that the court had explicitly rejected as untrustworthy the nearly identical testimony by mother before the court itself in May 2014. And the mother produced no evidence to demonstrate that in the one-month interim between the hearings, her living

circumstances had improved or that she had remedied the conditions that had led to the removal of her children.

{¶22} In its September 2014 entry granting permanent custody of C.M.'s siblings to HCJFS, the juvenile court detailed episode after episode of violence from the mother's history and remarked that the "historical and continuing environment of violence regarding this mother and her family is substantial." The court found that the mother had not been truthful with authorities about her children's exposure to violence and to her illicit drug use, and about whether her children had stayed with unauthorized caregivers.

{¶23} The court found most disturbing the sudden about-face by C.M.'s mother with respect to her involvement in the 2009 beating of C.M.'s oldest sibling. At the May 2014 hearing, C.M.'s mother claimed, apparently for the first time, that her boyfriend had struck her child. However, shortly after the incident, C.M.'s mother had not only admitted that she had struck the child, but she had gone so far as to demonstrate for investigators how she had folded a belt and struck the child. She had entered a no-contest plea to attempted child endangering, and had stipulated to the underlying allegations in the dependency complaint. What concerned the court most about the mother's May 2014 testimony was that if "the mother is telling the truth now, that means that she protected the abuser of her child, allowed her children to be removed from her and helped him escape justice."

{¶24} In addition, the court noted that the mother had denied that she had an anger-control problem and refused further services to address her anger despite her continued aggressive behavior. The court also noted that the mother did not have an adequate apartment, and had no income.

{¶25} The court concluded that a legally secure permanent placement for C.M.'s siblings could not be achieved without a grant of permanent custody to the agency because of "the continued violent environment of the mother and her demonstrated limited ability to comprehend the special needs of her children."

{¶26} The court determined that C.M.'s siblings could not be placed with their mother within a reasonable period of time and should not be placed with her. The court found that, notwithstanding reasonable case planning and diligent efforts to assist her, C.M.'s mother had failed continuously and repeatedly to remedy the conditions causing C.M.'s siblings to be placed outside the home. *See* former R.C. 2151.414(E)(1). The court found that:

> the mother fails to recognize the danger posed to the children through contact with others who have violent histories and have been violent in the presence of the children and placed them in danger. This dangerous risk makes the children's placement with their mother a threat to the children's safety.
>
> * * *
>
> [Her] history of anger and violence, her violent environment, and her reliance on her family for support places these children at risk. The mother doesn't appreciate the risk to her children by association with her relatives. Even as the mother professes that she can parent the children safely and will stay away from the grandmother, uncle and other individuals, her promises are viewed in the low credibility of her testimony and her repeated actions ignoring court orders to stay away from others as well

9

as her history of concealment of her actions from child care authorities.

{¶27} As we have noted, a court is required to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent once the court has determined by clear and convincing evidence that one or more of the enumerated factors exists. Former R.C. 2151.414(E); *In re Williams*, 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996). In this case, the court could deny permanent custody of C.M. to the agency only upon a finding that C.M.'s mother had proved by clear and convincing evidence that she could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of C.M. *See* former R.C. 2151.414(E)(11).

{¶28} A determination of whether the mother sufficiently demonstrated that she could provide for a secure placement and adequate care for C.M. is obviously guided by an examination of the relatively tight timeline in this case. The juvenile court granted permanent custody of C.M.'s siblings to HCJFS on September 1, 2014. We affirmed that judgment on December 24, 2014. Three weeks later, a magistrate denied permanent custody of C.M. to HCJFS. The juvenile court took no additional evidence and overruled objections to the magistrate's denial in May 2015.

{¶29} In other words, between the juvenile court's September 2014 finding that C.M.'s siblings should not be placed with their mother and the January 2015 finding by the magistrate that C.M. could be placed with the mother, no additional evidence had been taken. So there was no evidentiary basis for a determination that C.M. should be placed with the mother.

{¶30} To demonstrate her ability to provide a legally secure permanent placement and adequate care for C.M.'s health, welfare, and safety, the mother offered a single exhibit, consisting of visitation records from the FNC. However, those records and the testimony by FNC workers confirmed that, from the time that C.M. was born, the mother's visits at FNC had remained at the highest level of supervision. During visits with her three children at the FNC, the mother often bickered with the father of one of the children in front of the children. At one visit, the two of them got into a very loud argument and had to be separated from the children. Occasionally, the mother had fallen asleep while she was visiting the children, and would have to be woken by a facilitator.

{¶31} Although the mother had consistently attended visitation at FNC and had developed a bond with C.M., the juvenile court found that they did not have a real parent-child relationship because C.M. had never been in her care and the relationship had consisted of "artificial" interaction at the FNC for the entirety of C.M.'s life. This finding cast further doubt on the mother's suitability as a parent.

{¶32} Following our review of the extensive record in this case, we conclude that the mother failed to demonstrate by clear and convincing evidence that she was capable of providing C.M. with a legally secure permanent placement and adequate care for C.M.'s health, welfare, and safety. *See* former R.C. 2151.414(E)(11). *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247. As a result, the juvenile court was required to enter a finding that the child could not be placed with her within a reasonable time or should not be placed with her. *See id.*; former R.C. 2151.414(E). Consequently, all four factors under former R.C. 2151.414(D)(2) were

met, and a grant of permanent custody to HCJFS was mandatory. *See* former R.C. 2151.414(D)(2).

{¶33} Accordingly, we hold that the juvenile court erred by denying HCJFS's motion for permanent custody and by remanding custody to the mother. We sustain the first three assignments of error by HCJFS and the two assignments of error by the GAL. And we decline to address HCJFS's fourth assignment of error regarding protective supervision because it is moot. Consequently, we reverse the judgment of the juvenile court and enter judgment in favor of HCJFS on its motion for permanent custody of C.M.

Judgment accordingly.

**HENDON, P.J., CUNNINGHAM** and **MOCK, JJ.**

Please note:
The court has recorded its own entry on the date of the release of this opinion.