[Cite as *In re W.M.*, 2017-Ohio-1398.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: W.M., T.M., M.J., K.H.1, and K.H.2. | : | APPEAL NO. C-170003<br>TRIAL NO. F08-1347 |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 14, 2017

*Phyliss Schiff*, for Appellant Y.M.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jack L. Besignano*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, Guardian ad Litem for W.M., T.M., M.J., K.H.1, and K.H.2,

*J. Thomas Mellott*, for T.M.

**MYERS, Judge.**

{¶1}     This is an appeal by a mother, Y.M., challenging the Hamilton County Juvenile Court's judgment adopting the magistrate's decision which granted permanent custody of five of her children to the Hamilton County Department of Job and Family Services ("HCJFS").

### Procedural Background

{¶2}     On February 20, 2014, HCJFS filed a motion for an interim order of temporary custody of six of Y.M.'s children, including I.M., Z.M., W.M., T.M., M.J., and K.H.1. The motion was accompanied by a complaint alleging that the children were neglected, abused, and dependent.  It was additionally accompanied by an affidavit from a HCJFS social worker, alleging that W.M. and T.M. frequently arrived at school late, appearing dirty and unkempt; that the family residence was cluttered, had holes in the walls, and had broken windows; that Y.M. used the stove to heat the home; and that Y.M. would not verify whether K.H.1 was receiving medical care despite the child's apparent lethargy and protruding belly.  In addition, the social worker alleged that neither Y.M. nor K.H., the father of K.H.1, had participated in services recommended in a 2013 safety plan that had been put in place because of domestic-violence concerns.  The social worker alleged that K.H. had been convicted of disorderly conduct and assault and had been ordered to stay away from Y.M. and Z.M., the victims of his offenses, and that K.H. was reportedly residing in the family home, where he had been seen by the affiant.

{¶3}     A magistrate with the Hamilton County Juvenile Court granted HCJFS's motion for an interim order of temporary custody.  The magistrate's order

additionally granted Y.M. weekly supervised visitation and appointed a guardian ad litem for the children.

{¶4}  HCJFS implemented a case plan for the family.  On July 31, 2014, after conducting an adjudication and disposition hearing, the magistrate issued a decision adjudicating the children abused, dependent, and neglected, and committing them to the temporary custody of HCJFS.

{¶5}  On October 31, 2014, Y.M. gave birth to K.H.2.  HCJFS filed a motion for an interim order of temporary custody of K.H.2 on November 7, 2014.  The motion was accompanied by a complaint alleging that K.H.2 was dependent, and by an affidavit from a HCJFS social worker stating that K.H. was the alleged father of K.H.2; that the siblings of K.H.2 had been adjudicated abused, dependent, and neglected and were currently in the temporary custody of HCJFS; that Y.M. and K.H. were still in a relationship, and that K.H. continually violated orders to stay away from Y.M.; and that K.H. had visited Y.M. at the hospital, engaged in a confrontation with Y.M., and spat on her.

{¶6}  After a hearing, the magistrate granted HCJFS's motion for an interim order of temporary custody of K.H.2.  The magistrate's order additionally provided that Y.M. should receive weekly supervised visits with K.H.2 and appointed a guardian ad litem for the child.

{¶7}  On December 17, 2014, HCJFS filed a motion to extend temporary custody for all of the children.  On January 12, 2015, K.H.2 was adjudicated a dependent child.  And on February 18, 2015, the magistrate issued a decision committing K.H.2 to the temporary custody of HCJFS.  That decision also granted HCJFS's motion to extend temporary custody.

{¶8} On September 18, 2015, HCJFS filed a motion to modify temporary custody of W.M., T.M., M.J., K.H.1, and K.H.2 to permanent custody under R.C. 2151.413(A). I.M. and Z.M. turned 18 during the pendency of these proceedings. The magistrate granted motions to terminate temporary custody for I.M. and Z.M., and they are not parties to this appeal.

{¶9} On October 21, 2015, the trial court conducted an in camera hearing with the children, and it issued an order appointing a separate attorney for T.M. because his expressed wishes conflicted with those of his guardian ad litem.

{¶10} The magistrate conducted a two-day hearing on HCJFS's motion for permanent custody. During the hearing, the children's guardian ad litem argued in favor of HCJFS receiving a grant of permanent custody. T.M.'s attorney expressed T.M.'s desire to be returned to Y.M.'s care. On August 2, 2016, the magistrate issued a decision committing the children to the permanent custody of HCJFS. Y.M. filed an objection to the magistrate's decision, arguing that it was against the weight of the evidence.

{¶11} The trial court conducted a hearing on Y.M.'s objection. During that hearing, the guardian ad litem argued that T.M. now wished to be adopted and did not want to return to his mother's care. T.M.'s attorney concurred with the guardian ad litem and argued that the magistrate's decision should be upheld. On December 19, 2016, the trial court issued an entry overruling Y.M.'s objection and adopting the decision of the magistrate committing the children to the permanent custody of HCJFS.

{¶12} Y.M. has appealed from the trial court's entry, raising two assignments of error for our review.

### First Assignment of Error: Grant of Permanent Custody

{¶13} In her first assignment of error, Y.M. argues that the trial court erred in granting HCJFS's motion for permanent custody.

### A. Standard of Review

{¶14} A trial court's decision to award permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. Clear and convincing evidence is evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. When reviewing a trial court's decision to grant permanent custody, we will not substitute our judgment for that of the trial court when its determinations are supported by competent and credible evidence. *In re W.W.* at ¶ 46.

### B. Former R.C. 2151.414

{¶15} R.C. 2151.414 governs the procedures that apply when a motion for permanent custody has been filed under R.C. 2151.413. *Id.* at ¶ 47. R.C. 2151.414 was modified in October of 2016. We apply the version of the statute that was in effect on September 18, 2015, the date that HCJFS filed the motion for permanent custody. *In re C.M.*, 1st Dist. Hamilton Nos. C-150365 and C-150396, 2015-Ohio-3971, ¶ 13.

{¶16} Former R.C. 2151.414(B)(1) provided that a juvenile court may grant a motion for permanent custody if the court determines, by clear and convincing evidence, that a grant of permanent custody is in the best interest of the child, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶17} In its decision granting permanent custody to HCJFS, the magistrate found that a grant of permanent custody was in the best interests of the children. With the exception of contending that the trial court failed to take into account T.M.'s expressed desire to be returned to his mother's care (addressed below), Y.M. does not address this finding in her brief. Rather, Y.M. focuses her arguments on the second prong of former R.C. 2151.414(B).

{¶18} With respect to this second prong, the magistrate found that former R.C. 2151.414(B)(1)(d) applied to W.M., T.M., M.J., and K.H.1, because they had been

in the custody of HCJFS for 12 or more months of a consecutive 22-month period. But the magistrate found that this provision was inapplicable to K.H.2 because the child had only been in the custody of HCJFS for eight months at the time the motion for permanent custody was filed. The magistrate further found that the condition of former R.C. 2151.414(B)(1)(a) was met as to all the children—that they could not or should not be placed with either parent within a reasonable period of time because, pursuant to former R.C. 2151.414(E)(1), the services offered to the family had failed to remedy the issues that brought the children into the care of HCJFS. It is this finding that Y.M. attacks.

### C. Children Could Not or Should Not be Placed With Parents

{¶19} Y.M. first argues that the trial court erred in finding that the children could not or should not be placed with their parents within a reasonable time. She specifically argues that she had remedied the conditions that led to the removal of the children from her home. Her argument challenges the trial court's findings under former R.C. 2151.414(E)(1), which provided that:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

{¶20} Extensive testimony was presented at the permanent-custody hearing regarding the services that had been offered to Y.M. Atarah Cottingham, the HCJFS social worker assigned to Y.M.'s case, testified that HCJFS had concerns about the

domestic violence that had taken place in Y.M.'s home. To address these concerns, HCJFS asked Y.M. to participate in a domestic-violence assessment. Following the assessment, it was recommended that Y.M. attend a Women Helping Women support group for victims of domestic violence. Y.M. attended and completed the program, but Cottingham testified that she felt Y.M. had failed to gain any insight from the program regarding her relationship with K.H. Cottingham's concerns were based on the fact that Y.M. had a second child (K.H.2) with K.H. and had been protective of K.H. during these proceedings. Cottingham was not able to receive any reports from Women Helping Women regarding Y.M.'s participation in the group because Y.M. did not sign a required release.

{¶21} HCJFS had also asked Y.M. to attend therapy, which she did at the Central Clinic with staff therapist Evelyn Heflin. Heflin testified that Y.M. had completed a diagnostic assessment, which indicated that she suffered from a dysthymic disorder, or a low-grade persistent mood disorder. Heflin attempted to work on treatment for that disorder during therapy sessions and set goals of improving Y.M.'s mood and helping Y.M. handle life stressors. Heflin described Y.M.'s therapy attendance as consistent, with some cancellations and a period where Y.M. had disengaged. Cottingham, however, testified that Y.M. was not compliant with therapy, and that her attendance had been sporadic. Y.M. completely stopped attending for two periods of time, and she had to complete a second diagnostic assessment in order to resume therapy. Following that second assessment, it was recommended that Y.M. undergo a complete psychological assessment. Both Cottingham and Jeremy Page, an outreach coordinator who scheduled the psychological assessments, testified that Y.M. failed to complete the recommended

assessment despite multiple attempts to engage her in the service. Cottingham testified that the second diagnostic assessment also led to the recommendation that Y.M. attend Community Psychiatric Support Treatment ("CPST"), but that she failed to do so.

{¶22} The evidence presented established that HCJFS had many concerns about the state of Y.M.'s home because it was dirty, disorganized, and had an infestation problem. Because of these issues, HCJFS recommended that Y.M. participate in homemaker services through Lighthouse Youth Services. Cathy Vinegar was the homemaker assigned to work with Y.M. Vinegar testified that her goals included teaching Y.M. how to organize her home, eliminate clutter, and keep the kitchen clean. Vinegar began working with Y.M. in September of 2014. She testified that while her goal was to meet with Y.M. twice a week, Y.M. would occasionally miss appointments. However, testimony further established that Vinegar met with Y.M. only 21 times before Y.M.'s case was closed in June of 2015, when Vinegar felt that Y.M. was capable of completing the tasks that they had worked on.

{¶23} But Cottingham testified that, on her last visit to Y.M.'s home in late 2015, she still had concerns regarding clutter, infestation, and the organization of the home. Y.M. had refused to allow Cottingham back into her home after that last visit, so Cottingham was unable to verify whether the condition of Y.M.'s home had improved since completing the homemaker services.

{¶24} HCJFS had set up visitation at the Family Nurturing Center for Y.M. with her children. The visitation began in early 2014, shortly after HCJFS received custody of the children. Y.M. was initially granted facilitated visitation with the

children. During this type of visitation, a facilitator was present during the visit to offer directives. Cottingham testified that although Y.M. was consistent with her visitation, she never progressed past facilitated visitation. Y.M. would attempt to engage the children and would provide them with food, but the visits were chaotic and Y.M. did not demonstrate control over the children.

{¶25} Cottingham also offered testimony regarding the children's fathers. Other than K.H., none of the fathers had participated in the custody proceedings, and K.H. failed to participate in any services that had been offered to him.

{¶26} Y.M. provided testimony addressing her participation in these offered services. She testified that the problems with her home had been fixed. She denied that her home had ever had an infestation problem, stating that there had never been more than a few bugs and that she had put down boric acid to address the problem. Y.M. initially testified that she had denied Cottingham access to her home on a few occasions, but then later in her testimony denied having done so. With respect to her therapy with Heflin, Y.M. stated that she still tried to attend the therapy sessions, but that it was difficult because she had enrolled in school. She testified that she was no longer in a relationship with K.H., was not interested in maintaining contact with him, and that a relationship with him was not worth losing her children. Y.M. stated that the Women Helping Women group could have been a little stronger, but that she had learned a few things from the classes, including tips about how to get out of a violent situation. Y.M. testified that her caseworker had never asked her to complete a psychological assessment.

{¶27} The magistrate made extensive findings in support of her determination that the services offered to the family had failed to remedy the issues

that had brought the children into the care of HCJFS. With respect to HCJFS's domestic-violence concerns, the magistrate found that Y.M. had a history of engaging in domestically-violent relationships, and that Y.M. had failed to internalize what she had learned in the Women Helping Women group. The magistrate further found that Y.M. had not participated in the recommended CPST or the recommended psychological assessment, despite numerous attempts to have that assessment scheduled. The magistrate noted the number of therapy appointments with Heflin that Y.M. had missed, and questioned how Heflin could have described Y.M.'s attendance record as consistent in light of those missed appointments.

{¶28} The magistrate also noted the number of appointments that Y.M. had missed with her homemaker, and found that Y.M.'s refusal to let Cottingham inspect her home was of concern because of the home's unimproved condition on Cottingham's last visit. Addressing Y.M.'s testimony that she had improved the condition of the home, the magistrate noted that Y.M.'s testimony on the topic had been confusing and disjointed. With respect to visitation, the magistrate found that Y.M. had consistently visited the children, but that the visits were still at the highest level of supervision.

{¶29} The magistrate described Y.M.'s testimony on several different topics as confusing and incredible. She also found that service providers had consistently had difficulty in attempting to contact Y.M. or to schedule services.

{¶30} Following our review of the record, we conclude that competent and credible evidence supported the magistrate's finding that the services offered to the family had failed to remedy the issues that brought the children into the care of HCJFS, and that the children could not and should not be placed with a parent

within a reasonable time. *See In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, at ¶ 46.

### D.  T.M.'s Wishes

{¶31}  Y.M. additionally argues in her first assignment of error that the trial court failed to take into account T.M.'s desire to be returned to his mother's care.

{¶32}  The magistrate had appointed an attorney for T.M. during these proceedings because his expressed wishes had differed from those of his guardian ad litem.   During the custody hearing, T.M.'s attorney expressed his desire to be returned to his mother's care.  But during the hearing before the trial court on Y.M.'s objection, the guardian ad litem expressed T.M.'s desire to be adopted, rather than be returned to his mother's care.  T.M.'s attorney concurred with the guardian ad litem and argued that the trial court should uphold the magistrate's decision granting permanent custody of the children to HCJFS.  The trial court's decision committing T.M. into the permanent custody of HCJFS was in accordance with T.M.'s expressed desire to be adopted.  Y.M.'s argument is without merit.

{¶33}  The trial court did not err in granting custody of Y.M.'s children to HCJFS.  The first assignment of error is overruled.

### Second Assignment of Error:  Filing for Permanent Custody was not Premature

{¶34}  In her second assignment of error, Y.M. argues that HCJFS's motion for permanent custody was filed prematurely.  In support of her argument, Y.M. relies on R.C. 2151.413(D)(3)(b), which provides that:

> An agency shall not file a motion for permanent custody under
>
> division (D)(1) or (2) of this section if any of the following apply

* * *

(b) if reasonable efforts to return the child to the child's home are required under section 2151.419 of the Revised Code, the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home.

{¶35} Y.M. argues that HCJFS filed the motion for permanent custody prematurely because it filed the motion before she had scheduled a complete psychological assessment that was recommended following her diagnostic assessment.

{¶36} We find that R.C. 2151.413(D)(3)(b) is inapplicable to the case before us. R.C. 2151.413(D)(3)(b) applies only if reasonable efforts to return the child are required under R.C. 2151.419. The Supreme Court of Ohio has held that the requirement to make reasonable efforts set forth in R.C. 2151.419 does not apply to an R.C. 2151.413 motion for permanent custody. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41. The court noted that, despite the inapplicability of R.C. 2151.419 to motions for permanent custody filed under R.C. 2151.413, in the absence of a narrowly defined statutory exception, the state must still make reasonable efforts to reunite the family during the custody proceedings prior to the termination of parental rights. *Id.* at ¶ 43. It stated that "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.*

{¶37} In this case, prior to the hearing on the motion for permanent custody, the magistrate made several findings under R.C. 2151.419 that the state had made

reasonable efforts to return the children to the home. And although it was not necessary, the magistrate also made a reasonable-efforts finding in its entry granting permanent custody of the children to HCJFS.

{¶38} Thus, despite our determination that R.C. 2151.413(D)(3)(b) is inapplicable to this case, because the trial court adopted the magistrate's reasonable-efforts finding, and because all counsel addressed Y.M.'s argument, we briefly address the argument and find that it has no merit. The psychological assessment was just one of many services that HCJFS offered to Y.M. during these proceedings. And the record reflects that Y.M. failed to schedule the assessment despite multiple attempts to have it scheduled. Thus, HCJFS did not fail to provide services required by the case plan.

{¶39} Y.M.'s second assignment of error is overruled, and the judgment of the trial court granting permanent custody of the children to HCJFS is affirmed.

Judgment affirmed.

CUNNINGHAM, P.J., and DETERS, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.