[Cite as *In re Z.P.*, 2017-Ohio-6987.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: Z.P., Y.P., D.P., J.H., AND P.H. | : | APPEAL NOS. C-160572 |
|  |  | C-160584 |
|  | : | C-160620 |
|  |  | TRIAL NO. F11-2431Z |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: July 28, 2017

*Raymond T. Faller*, Hamilton County Public Defender, and *Robert Adam Hardin*, Assistant Public Defender, Appellant Guardian ad Litem for Z.P., Y.P., D.P., J.H., and P.H.,

*Raymond Becker*, for Appellee Mother,

*The Barbanel Law Firm, LLC*, and *Roberta J. Barbanel*, for Appellee P.H., father of J.H., and P.H.,

*James W. Costin*, *In re Williams* attorney for the children, Z.P., Y.P., D.P., J.H., and P.H.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Lee Slocum*, Assistant Prosecuting Attorney, for Hamilton County Department of Job and Family Services.

**MYERS, Judge.**

{¶1} The guardian ad litem ("GAL") for the children, Z.P, Y.P., D.P., J.H., and P.H., has appealed from the juvenile court's judgment denying the motion filed by the Hamilton County Department of Job and Family Services ("HCJFS") for permanent custody, and awarding legal custody of the children to their mother.

## Background

{¶2} Mother has three children, Z.P., Y.P., and D.P., from her relationship with Y.P., Sr. The father of her other two children, P.H. and J.H., is her husband, P.H. ("stepfather").

{¶3} On October 26, 2011, HCJFS filed a complaint alleging that mother's five children were abused and dependent, after mother refused to cooperate with an investigation into allegations that stepfather had sexually abused her then five-year-old daughter, D.P. HCJFS alleged that the child had tested positive for gonorrhea, as did stepfather. A magistrate of the Hamilton County Juvenile Court granted temporary custody of the children to HCJFS, and HCJFS implemented a case plan for the family.

{¶4} In March 2012, HCJFS filed an amended complaint seeking permanent custody of the five children. M.F., a paternal aunt, filed a petition for custody of Z.P., Y.P., and D.P. Then P.B.C., the maternal grandmother, petitioned for custody of all five children.

{¶5} In October 2013, D.P. was adjudicated abused and dependent, and the other four children were adjudicated dependent. Over the next several months, the magistrate conducted 13 evidentiary hearings, culminating on July 7, 2014.

### *The Magistrate's Decision*

{¶6}    After continuing the matter numerous times, the magistrate issued a decision in July 2015, awarding legal custody of Z.P., Y.P., and D.P. to M.F., and awarding permanent custody of P.H. and J.H. to HCJFS.

{¶7}    In his decision, the magistrate discussed the evidence that had been presented.  He noted that mother had completed all of the recommended case-plan services, including parenting and domestic-violence education, as well as individual therapy.  According to the Family Nurturing Center ("FNC"), mother had visited consistently with her children and there was no concern about her contact with or care for the children.  In addition, mother had participated in some of D.P.'s therapy sessions and was highly supportive of the child.

{¶8}    With respect to D.P.'s contraction of gonorrhea, the magistrate determined that D.P. had been the victim of sexual abuse, noting that stepfather had tested positive and had been treated for gonorrhea contemporaneously with the child's diagnosis and treatment.  The magistrate noted that police had conducted an investigation into the likely sexual abuse of D.P.  The child had been subjected to forensic interviews in which she had identified stepfather as the perpetrator.  She also identified a 17-year-old person named "D.J." as a perpetrator.  Police were unable to identify anyone named "D.J."

{¶9}    Stepfather submitted to, and failed, a police polygraph examination about sexual misconduct with D.P.  Stepfather claimed that the test results had been skewed because he had been emotionally agitated and upset at the time.  He later passed a polygraph administered by an independent examiner.

{¶10} The magistrate noted that Rachel Rigg, D.P.'s longtime therapist, testified that D.P. had never disclosed abuse by anyone named D.J., and that the child

consistently discussed abuse by her "dad," whom she identified as stepfather. Rigg said that D.P. had identified no potential perpetrator other than stepfather.

{¶11} The magistrate concluded that stepfather had sexually abused D.P., and that mother, stepfather, and Y.P., Sr., lacked fitness to care for their respective children.

{¶12} The magistrate determined that mother was not an appropriate caregiver for her children. The magistrate noted mother's continuing insistence that D.P. had contracted gonorrhea at birth, despite clear medical evidence to the contrary. Mother disbelieved D.P.'s statements about sexual abuse and maintained that D.P.'s therapist had influenced the child's narrative of abuse. The magistrate found that mother would not be dutiful in protecting D.P. from further abuse, and could not genuinely support or participate in D.P.'s trauma therapy. The magistrate determined that mother was not prepared to meet D.P.'s emotional and mental-health needs. In addition, mother remained married to stepfather, despite her claim that they had separated. The magistrate concluded that mother did not perceive stepfather as a risk to her children, so it was unlikely that mother would adhere to court orders preventing stepfather from having contact with the children.

{¶13} Consequently, the magistrate determined that an award of custody to M.F. was in the best interest of Z.P., Y.P., and D.P. With respect to J.H. and P.H., the magistrate determined, in accordance with R.C. 2151.414(D)(1), that an award of permanent custody to HCJFS was in their best interest, and that the children should not be placed with either parent, pursuant to R.C. 2151.414(E). Accordingly, the magistrate awarded legal custody of Z.P., Y.P., and D.P. to M.F., and awarded permanent custody of P.H. and J.H. to HCJFS.

{¶14} Objections to the magistrate's decision were filed by mother, stepfather, HCJFS, and the GAL. In addition, the GAL filed motions for in-camera interviews with the children and to present additional evidence. The GAL noted that the last trial date

4

had been in July 2014 and that the magistrate had not issued his decision until a year later. The juvenile court granted the GAL's motions.

{¶15} Beginning in April 2016, the court took additional evidence over the course of several more dates, and conducted in-camera interviews with the children.

### The Juvenile Court's Judgment

{¶16} On June 27, 2016, the court issued a judgment modifying the magistrate's decision. The court determined that M.F. was no longer a viable legal custodian for Z.P., Y.P., and D.P., and that an award of permanent custody to HCJFS was not in the best interest of any of the children. The court placed the children in the legal custody of mother, with an order limiting the children's contact with their fathers. The trial court stayed its order pending appeal.

### The Appeals

{¶17} The GAL and HCJFS appealed the court's judgment, but HCJFS later withdrew its appeal without explanation. In a single assignment of error, the GAL argues that the juvenile court's determination that mother had substantially remedied the conditions that caused the children to be placed outside the home was contrary to the weight of the evidence. The GAL argues that the trial court should have found that mother failed to remedy the problems and that it was in the best interest of the children to award permanent custody to HCJFS.

{¶18} A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. "Clear and convincing evidence" is evidence sufficient to "produce in the mind of the trier of fact[] a firm belief or

5

conviction as to the facts sought to be established." *Id.,* quoting *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42.  In reviewing a juvenile court's determination on a permanent-custody motion, we must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard.  *Id.*

{¶19}  R.C. 2151.414 governs the procedures a juvenile court must follow and the findings it must make on a motion for permanent custody.  *Id.* at ¶ 46.  We will apply the version that was in effect on the date that the motion for permanent custody was filed, which in this case was March 8, 2012.  *See In re C.E.1,* 1st Dist. Hamilton No. C-140674, 2015-Ohio-5710; *In re C.M.,* 1st Dist. Hamilton Nos. C-150365 and C-150396, 2015-Ohio-3971, ¶ 13.

{¶20}  Under former R.C. 2151.414(B)(1)(a), a juvenile court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time, or should not be placed with either parent, and determines that permanent custody is in the child's best interest.

### *Cannot or Should Not be Placed with Mother*

{¶21}  Under former R.C. 2151.414(E), the juvenile court must enter a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent if it determines by clear and convincing evidence that one of the factors listed in former R.C. 2151.414(E)(1) through (16) exists as to each of the child's parents.

{¶22}  In this case, the juvenile court found by clear and convincing evidence that one or more of the factors in former R.C. 2151.414(E) existed as to each of the

fathers, but not as to mother. After considering each of the factors, the court concluded that the children could be placed with mother, with orders limiting the fathers' contact with the children.

{¶23} The GAL contends that the juvenile court's determination that the children should be placed with mother was against the weight of the evidence. Specifically, the GAL asserts that the evidence supported a finding under former R.C. 2151.414(E)(1) that mother had failed to remedy the conditions causing the children to be placed outside the home. In addition, the GAL asserts that mother's demonstrated unwillingness and inability to provide a safe and adequate home for her children and to prevent her children from suffering physical, emotional, or sexual abuse, supported findings under former R.C. 2151.414(E)(4) and (14). We agree.

{¶24} As the juvenile court pointed out in its decision:

The main issue in this case throughout and the main issue still remaining is whether the mother is capable of or willing to protect her children from the fathers. This has been particularly true regarding [stepfather]. * * * The mother has held out from the beginning of this case, and still does, that her husband did not commit that act. The concern of child caring authorities is that the mother will not protect the children from further abuse by [stepfather] and will cover up for him.

{¶25} The court determined that strong evidence indicated that stepfather had "sexually abused his stepchild [D.P.] when she was 5 years old and that he sexually transmitted the disease of gonorrhea to her," but then stated that the evidence was "not conclusive." The court found, however, that "[t]he fact that the step-father lived with the child; that both he and [D.P.] had gonorrhea at near the same time; and his

7

deception at the hospital and other times is strong evidence against him; especially when coupled with [D.P.'s] statements."

{¶26}  The court noted that mother is still married to stepfather and continued a close relationship with him, even though she "lamely" claimed to be separated from him and living apart.  The court noted that much of the concern regarding mother's willingness and ability to protect her children from stepfather stemmed from her history of ignoring protective orders and her ongoing deceptive behavior.  Early on in the case, mother and stepfather had both violated an order that they have no unsupervised contact with the children when they took D.P. to the hospital to demand a rape kit, and then lied about their reason for the hospital trip.  An early safety plan required a family supervisor to be present at all times, but when HCJFS caseworkers went to the home, no supervisor had been present.  Mother and maternal grandmother had actively attempted to thwart the physical removal of the children from the home.  Also, stepfather had visited with mother and the children, despite orders prohibiting him from having contact with them, and mother had inappropriately recorded statements by stepfather to be played for the children during her visits with them.

{¶27}  Even after mother claimed to have separated from stepfather, the two had been seen together on multiple occasions, including hospital visits, court hearings, and visitation appointments.  Mother and stepfather had arrived at an HCJFS meeting together but had entered separately so as to appear not to be together.  In addition, the court noted, the two had appeared to "be in some type of financial arrangement along with the grandmother in the purchase of the mother's current home."  The court also stated, "There were many other examples of mother's and [stepfather's] deceptive actions that created HCJFS distrust regarding the mother's willingness to overlook the

safety of her children in favor of her relationship with [stepfather] and hide it from authorities."

{¶28}  In addition, the court recognized:

But the mother never satisfied the main requirement expected by [HCJFS]; that is, to acknowledge that her husband sexually abused [D.P.] and that she would discontinue association with him, forbid him to be near the children and protect them from him.  Throughout the hearings, testimony and reports[,] there were indications that the children would have been returned to the mother if she would acknowledge her husband's culpability with [D.P.].

{¶29}  The court also noted that "mother still supports her husband and does not believe that he sexually abused her daughter."  We note that mother has consistently insisted that stepfather is not the perpetrator and therefore, we do not believe she is capable of, or willing to, protect her children from him.  This is true even with court orders in place.

{¶30}  We agree with the GAL that the evidence supported a finding by clear and convincing evidence that mother failed to remedy the underlying problem that initially caused her children to be removed from their home because she failed to acknowledge the overwhelming evidence that stepfather had sexually abused her child.  *See* former R.C. 2151.414(E)(1).  Mother's conduct demonstrated her unwillingness to provide an adequate permanent home for the children or to prevent them from suffering abuse.  *See* former R.C. 2151.414(E)(4) and (14).  The record contained ample evidence that the children should not be placed with mother.  Moreover, given mother's well-documented history of ignoring court orders concerning stepfather's contact with the children and her deception about his ongoing involvement in their lives, the

likelihood of mother's adhering to another order limiting stepfather's contact with the children was, at best, remote.  The juvenile court should have entered a finding that the children cannot be placed with mother.  *See* former R.C. 2151.414(E).

### *Best Interest*

{¶31}  For the same reasons that the children should not be returned to their mother, their best interest would not be served by returning them to her.  In assessing the best interest of a child for purposes of a permanent-custody determination, a juvenile court must consider all relevant factors, including:  (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-0f-home providers, and any other person who may significantly affect the child; (b) the wishes of the child; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under former R.C. 2151.414(E)(7) to (11) apply.  Former R.C. 2151.414(D)(1)(a)-(e); *In re K.G.* at ¶ 16.

{¶32}  In this case, the juvenile court discussed each of the best-interest factors in its decision.  With respect to the children's interaction with significant others, the court noted that the children had lived with mother until they were removed from her home in 2011.  At the time of removal, the children were ages eight, six, five, two, and 11 months.  By the time of the court's decision in 2016, the children had been out of mother's home for four and a half years.  The court noted that the children love their mother and are bonded to her.

{¶33}  Mother's three oldest children had a tumultuous relationship with their father, Y.P., Sr.  During their early years living with mother and Y.P., Sr., the children witnessed incidents of domestic violence and sexual assault.  Y.P., Sr., had been

incarcerated for much of his children's lives, and had demonstrated no interest in his children in recent years. The court noted that his children wanted nothing to do with Y.P., Sr., and that they considered stepfather to be their "daddy." Although mother's two youngest children had been removed from her care when they were two years old and 11 months old, respectively, stepfather had visited with them and they had become bonded to him.

{¶34} The court noted that the children's current foster mother has a very close relationship with the children and that the children are bonded to her. At the time of the court's decision, D.P. had been in the foster mother's care for four years, and the other children had been in her care for at least two years. The court noted that the children have thrived in her home because she and her husband have addressed their many needs. The court noted that the foster mother and her husband are willing to adopt the children if permanent custody was awarded to HCJFS.

{¶35} In considering the wishes of the children, the court noted that the four oldest children wanted to return to their mother and to stepfather. Although the youngest was not sufficiently able to express his wishes, he clearly indicated that he felt a part of the family with his father, siblings, and mother. The court further noted that the children want to be adopted by their foster mother, "who they like and trust," if they cannot return to their mother and to stepfather.

{¶36} The court considered the custodial history of the children, reiterating that the children had been in foster care since 2011 when the allegations of sexual abuse arose. The court determined that the children no longer qualified for temporary custody.

{¶37} Given our determination that the evidence supported a finding that the children should not be returned to their mother, and considering the factors of former

11

R.C. 2151.414(D)(1), the court's conclusion that the best interest of the children would be served by returning them to mother was against the weight of the evidence.

### *Conclusion*

{¶38} Following our review of the record, we hold that the juvenile court's determination to deny permanent custody to HCJFS was contrary to the evidence. *See In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. Accordingly, we hold that the juvenile court erred by denying HCJFS's motion for permanent custody and by remanding custody to mother. We sustain the assignment of error. Consequently, we reverse the judgment of the juvenile court and remand this matter for the court to enter judgment in favor of HCJFS on its motion for permanent custody.

Judgment accordingly.

**MOCK, P.J.,** and **MILLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.