[Cite as *In re A.B.*, 2015-Ohio-3247.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: A.B., G.B., and J.B.

:          APPEAL NOS. C-150307
                              C-150310
:          TRIAL NO. F11-2776X

:
          *O P I N I O N.*
:

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed from is:  Affirmed

Date of Judgment Entry on Appeal:  August 14, 2015

*Christopher P. Kapsal,* for Appellant Mother,

*Raymond Becker*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Elizabeth Sundermann*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller,* Hamilton County Public Defender, and *Nicholas Varney*, Assistant Public Defender, Attorney Guardian Ad Litem for A.B., G.B., and J.B.,

*Kacy Eaves*, Attorney Guardian Ad Litem for Mother.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1} In these consolidated appeals, the mother and father of A.B., G.B., and J.B. challenge the judgment of the Hamilton County Juvenile Court adopting a magistrate's decision to grant permanent custody of their children to the Hamilton County Department of Job and Family Services ("JFS"). Because the decision to terminate the parental rights and award permanent legal custody to JFS was supported by sufficient evidence and was not against the manifest weight of the evidence, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶2} This case involves three children. The oldest, A.B., was born in September 2009, followed by G.B., who was born in December 2010. These two children came into the care of JFS in December 2011, following diagnoses of failure to thrive, in part because both were seriously underweight, and A.B. had not been seen by a medical provider since birth. The court appointed a guardian ad litem for the children and a guardian ad litem for mother. Subsequently, the court adjudicated the children as neglected and dependent, and awarded temporary custody to JFS in May 2012.

{¶3} J.B. was born prematurely during the pendency of this action, in January 2013. JFS was awarded interim custody within days of his birth, based in part on the hospital staff's observations that mother was not properly caring for him. The trial court later adjudicated J.B. dependent and awarded temporary custody of him to JFS in August 2013.

{¶4} Each of these children has special needs that require ongoing, specialized, medical and therapeutic attention. In addition to asthma, A.B. has

severe mental-health issues. She has been diagnosed with "eating disorder, post-traumatic stress disorder, and reactive attachment disorder." She will continue to need medical attention for these issues well into the future and is at risk for developing multiple-personality disorder.

{¶5} G.B. has been diagnosed with nonorganic feeding issues that require the use of a feeding tube at times and regular appointments with a "feeding team" at Children's Hospital. He also has "global" developmental delays, which require occupational therapy. J.B. has been diagnosed with torticollis and plagiocephaly, and will need ongoing monitoring for an abnormal voice box.

{¶6} To adequately care for the children, the caregivers for these children must understand the children's special needs, provide the necessary care at home, and diligently ensure that the children attend the numerous appointments with their medical providers.

{¶7} The parents sought reunification with the children as a couple. JFS developed a case plan to facilitate the reunification. This plan consisted of (1) diagnostic assessments, (2) parenting education, (3) attendance at the children's medical appointments, (4) Intensive Family Reunification Services ("IFRS"), and (5) visitation with the children.

{¶8} The parents made some progress in the case-plan services, although they were inconsistent in attending the children's medical appointments and in visiting with the children under the supervision of the Family Nurturing Center ("FNC"). JFS obtained extensions of temporary custody, and the parents had progressed to the point of having several in-home, unsupervised overnight weekend visits with A.B., one of which included G.B.

{¶9}   In September 2013, JFS moved the court to remand custody of A.B. and G.B. to the parents.  But the feedback from those who were monitoring and assisting the family during the period of unsupervised visitation was negative.  As a result, in November 2013, JFS withdrew its previously filed motion, terminated unsupervised visitation, resumed supervised visitation at the FNC, and moved for permanent custody of all three children.  The children's uncle moved for custody in February 2014, but he withdrew his petition two months later.  Thereafter, the children's guardian ad litem recommended the grant of permanent custody to JFS.

{¶10}  Dispositional hearings took place on multiple dates.  The parents arrived late on one date and failed to appear on another.   JFS presented the testimony of the JFS caseworker for the children, A.B.'s therapist from the Children's Hospital Department of Psychiatry, the Lighthouse Youth Services case manager for the children, and the caseworker assigned to the family from the Beech Acres Parenting Center's intensive family reunification program. Both parents testified, and mother additionally presented the testimony of two of the family's visitation facilitators from the FNC.  These two witnesses testified that the parents had acted appropriately during their supervised visitation and had bonded with the children.

{¶11}  The magistrate issued a decision terminating the rights of the parents and awarding permanent custody to JFS.  The decision included a thorough summary of the relevant evidence and findings under the applicable statutory sections based on that evidence.  Both parents filed objections.  The trial court overruled the objections, adopted the magistrate's decision, and awarded permanent custody of all three children to JFS.

{¶12} The parents now appeal, each raising a single assignment of error. Mother argues that the trial court's decision was against the manifest weight of the

evidence; father argues that the trial court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. Both request that this court reverse the judgment awarding permanent custody to JFS. The children's guardian ad litem, the mother's guardian ad litem, and JFS have each filed a brief in support of the trial court's judgment.

## II. Analysis

{¶13} In this case, the termination of parental rights is governed by R.C. 2151.414. Before terminating the parental rights, the trial court had to find that it was in the children's best interests to be placed in the permanent custody of the moving agency, by considering the factors set forth in R.C. 2151.414(D). It also had to find one of the four conditions listed in R.C. 2151.414(B)(1)(a)-(d) with respect to each child.[1] Both findings in the two-pronged analysis had to be supported by clear and convincing evidence. R.C. 2151.414(B)(1).

### A. Standard of Review

{¶14} This court has stated in our review of permanent-custody cases that "we will not substitute our judgment for the trial court where some competent and credible evidence supports the essential elements of the case." *In re M.R.*, 1st Dist. Hamilton No. C-130401, 2013-Ohio-4460, ¶ 5, citing *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. *See In re E.S.*, 1st Dist. Hamilton Nos. C-100725 and C-100747, 2011-Ohio-586, ¶ 3. To the extent that this standard suggests a merger of the legally separate concepts of the sufficiency and manifest weight of the evidence in these cases, *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 15, we clarify that in these cases, like in

---

[1] We note that the statute governing motions for permanent custody has been amended recently. We apply the version that was in effect on November 26, 2013, the date the motion for permanent custody was filed.

other civil cases, there is a difference between our review for the sufficiency of the evidence and a review for the weight of the evidence. *See Eastley* at paragraph two of the syllabus.

{¶15}  Our review for sufficiency asks whether some evidence exists on each element. *Id.* at ¶ 19.  It is a test of adequacy, and whether the evidence is sufficient to sustain the judgment is a question of law.  *Id.* at ¶ 11. Our review for weight asks whether the evidence on each element satisfies the burden of persuasion, which in this case was a clear and convincing standard.  *Id.* at ¶ 12 and ¶ 19.

{¶16}  In reviewing a weight of the evidence challenge, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See, e.g.*, *Eastley* at ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  But "[i]n weighing the evidence, [we] must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

### B. Best-Interest Prong

{¶17}  In assessing the best interest of a child, the court must consider "all relevant factors," including (1) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed by the child or the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement

6

may be achieved without a grant of permanent custody; and (5) whether any of the factors under R.C. 2151.414(e)(7) through (11) apply. R.C. 2151.414(D)(1)(a)-(e). Pursuant to R.C. 2151.414(D), "no[] element is given greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶18} We find no error in the trial court's conclusion that granting permanent custody to JFS was in the best interests of the children. Appropriately, the court's main focus was on the parents' actual ability to care for the special needs of the children.

{¶19} The court found that the parents loved the children and interacted with them appropriately during visitation, but that the evidence also demonstrated that the parents were unable to provide for the children's special needs. This was based not only on the parents' failure to consistently attend the children's medical appointments, which left father without the details and mechanics of caring for the children, but also on mother's inability to appreciate their special needs and what was required to address those issues notwithstanding her attendance at about 65 percent of the appointments.

{¶20} As the trial court noted, the evidence, including mother's own testimony, showed that mother had erroneously administered A.B.'s asthma medication despite her familiarity with the medication, which father used for his asthmatic condition. And this occurred when the parents only had one child to care for during the overnight unsupervised visit. Moreover, both parents had the opportunity to engage in therapeutic exercises with the children during visitation, but neither did.

{¶21} Although mother attended more medical appointments than father, the JFS caseworker and the IFRS caseworker testified that mother was not able to

adequately relay the knowledge she learned about caring for the children's conditions, and mother was dismissive of A.B.'s mental-health issues. These witnesses also noted that mother, who needed the assistance of a guardian during the course of this case, could not keep track of the children's appointments despite their assistance, and that she lacked planning skills.

{¶22} The parents maintain that the appointments were not convenient for them, and therefore, the agency did not make reasonable reunification efforts. But throughout this case, the court found that the agency had made reasonable efforts, and the record supports this determination.

{¶23} In addition to the parents' inability to care for the children's special needs, the evidence demonstrated that the parents did not have approved housing and were not consistent in attending visitation with the children. Their lack of attendance at visitation was substantial enough that the FNC facilitator testified that he would have concerns about the parents returning to unsupervised visitation based solely on their demonstrated inability "to get to the places where they're supposed to be."

{¶24} Further, the evidence demonstrated that A.B. did not do well physically or mentally after unsupervised visitation with her parents but, conversely, that all of the children were doing well with their foster family.

{¶25} The other statutory factors the court cited in support of its best-interests determination were amply supported in the record. At the time that JFS had moved for permanent custody, A.B. and G.B. had been in the temporary custody of JFS for well over 12 or more months of a consecutive 22-month period, and J.B. had been in temporary custody since his birth 11 months prior. And these young children with special needs were in need of a legally secure permanent placement to

8

ensure their care, a placement that could only be achieved with a grant of permanent custody. Finally, while the children's guardian ad litem did not inquire into the children's wishes with respect to their parents due to their young age and immaturity, he concluded, after an investigation, that an award of permanent custody to JFS would be in the children's best interests.

{¶26} We hold that there was sufficient evidence in the record to support the trial court's findings that permanent custody with JFS was in the best interests of all three children.

{¶27} Moreover, we hold that this evidence was clear and convincing, and we cannot say that the trial court lost its way when evaluating the persuasiveness of this evidence. The parents argue that the judgment was against the manifest weight of the evidence because they claim it was contrary to the evidence that showed they loved their children and had made sufficient progress with their case plan. They note that JFS had obtained extensions of temporary custody and at one point had sought to terminate temporary custody of the older children and return them to the custody of their parents. However, the record shows that when JFS moved to return the children to their parents, unsupervised visitation had just begun. Although it is admirable that the parents progressed that far in the reunification process, they simply were unable to successfully move beyond supervised visitation.

{¶28} And we cannot reverse the trial court's judgment because it is merely contrary to some evidence. Consistent with the deference afforded the fact-finder, especially in custody cases, to reverse on the ground that the judgment was against the manifest weight of the evidence, the judgment must be so contrary to the probative value of all the admissible evidence that was before the trial court that we can only conclude that the court lost its way and a manifest miscarriage of justice

9

resulted. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 20-21; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

## C. R.C. 2151.414(B)(1) Prong

{¶29} Next we consider whether sufficient evidence supports the trial court's finding that one of the four conditions in R.C. 2151.414(B)(1) applies for each child. These conditions are (a) the child is not abandoned or orphaned and had not been in agency custody for 12 or more months of a consecutive 22-month period, but the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and no relatives are able to take permanent custody, or (d) the child had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ("12 of 22") at the time the agency moved for permanent custody.

{¶30} Here, it is undisputed that, based on their history, A.B. and G.B met the "12 of 22" condition under R.C. 2151.414(B)(1)(d). The "12 of 22" condition was not satisfied, however, with respect to J.B. But the record supports the trial court's finding under R.C. 2151.414(B)(1)(a) that J.B. could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶31} In making the determination under R.C. 2151.414(B)(1)(a), the court found, consistent with R.C. 2151.414(E)(1), that following the placement of the child outside the child's home, and despite reasonable case-planning efforts by JFS to assist the parents in remedying the conditions that led to the removal, the parents failed to remedy the conditions causing J.B. to be placed outside the home. The evidence demonstrated that J.B., like his siblings, has significant medical needs. The case-plan services were primarily intended to help the parents understand and prepare for the significant ongoing needs of the children. The parents failed to make

more than moderate progress in the recommended case-plan services and, despite the ample opportunity, they failed to demonstrate the knowledge and diligence required to care for J.B.

{¶32} Ultimately, JFS presented sufficient evidence in support of its claim that one of the conditions set forth in R.C. 2151.414(B)(1) applied to each child. Further, the evidence was clear and convincing, and there is no basis to conclude that the trial court lost its way or committed a manifest miscarriage of justice in resolving the factual issues against the parents.

## III. Conclusion

{¶33} Because JFS presented clear and convincing evidence in support of its complaint for permanent custody, we hold that the trial court's judgment was both supported by legally sufficient evidence and was not against the manifest weight of the evidence. We overrule the assignments of error, and we affirm the trial court's judgment terminating the parental rights and granting permanent custody to JFS.

Judgment affirmed.

**MOCK** and **STAUTBERG, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.