[Cite as *In re D.B.*, 2017-Ohio-5792.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: D.B., B.B., J.B. | : | APPEAL NOS. C-170102 |
| | | C-170115 |
| | : | C-170151 |
| | | TRIAL NO. F08-2340x |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 12, 2017

*Roger W. Kirk,* for Appellant J.B.,

*Phyllis Schiff,* for Appellant T.B.,

*Hugh P. McCloskey, Jr.,* for Appellant J.K.,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christopher Brown,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller,* Hamilton County Public Defender, and *Marjorie Davis,* Assistant Public Defender, Guardian ad Litem.

**MILLER, Judge.**

{¶1}   In these consolidated appeals, Father, Mother, and Grandmother each appeal from the Hamilton County Juvenile Court's judgment terminating Mother's and Father's parental rights, denying Grandmother's petition for legal custody of the children, and awarding permanent custody of D.B., B.B., and J.B. to the Hamilton County Department of Job and Family Services ("HCJFS").  We affirm.

{¶2}   Father contends, in one assignment of error, that the trial court's judgment was against the weight and the sufficiency of the evidence. Mother raises two assignments of error.  She asserts (1) that the trial court erred as a matter of law by granting HCJFS's motion for permanent custody, essentially raising a weight-of-the-evidence argument, and (2) that she was not afforded due process of law when she was denied the opportunity to cross-examine the magistrate presiding over the custody trial.   Grandmother, who had petitioned for custody of the children, adopts by reference Mother's and Father's assignments of error, and the arguments made in support thereof. Mother, Father, and Grandmother all assert that Grandmother should have been awarded custody of the children.   Mother and Father also contend that another relative, C.B., who was not a party to these proceedings and did not petition for custody, should have been awarded legal custody of the children.   In the alternative, Father requests that the trial court's judgment be vacated and the case be remanded so that temporary custody can be extended, allowing him time to complete recommended services so that he may be reunited with his children.

## The Law

{¶3}   It is well-settled that parents who are suitable persons have a paramount right to the custody of their minor children. *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977). "The fundamental interest of parents is not absolute, however." *In*

*re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. In a custody determination, the best interest of the child controls. *Id.*

{¶4} Before terminating parental rights and awarding permanent custody to a children services agency, a court must determine by clear and convincing evidence (1) that it is in the best interest of the child to grant permanent custody to the agency by considering, in this case, the factors in R.C. 2151.414(D)(1)(a)-(e), and (2) whether any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) apply. *See In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 13; *In re W.W.,* 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 48.

### R.C. 2151.414 Analysis

{¶5} In this case, it is not disputed that the condition set forth in R.C. 2151.414(B)(1)(d) was met—that each of the children had been in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period. We therefore focus our analysis on the "best-interest" determination.

{¶6} To determine a child's "best interest" under R.C. 2151.414(D)(1)(a)-(e), the court considers "all relevant factors," including, but not limited to, the child's interactions and relationships with his or her parents, siblings, relatives, and foster caregivers or any other out-of-home providers; the wishes of the child, expressed directly through the child or through the child's guardian ad litem; the custodial history of the child; the child's need for a legally secure placement and whether that could be achieved without a grant of permanent custody to a children's services agency, and whether any of the factors under R.C. 2151.414(E)(7) through (11) apply.

{¶7} Here the termination of Mother's and Father's parental rights turned mainly on Mother's issues with illegal drugs and her inability to appropriately parent her children, and on Father's criminal history and history of incarceration. These

factors do not fit neatly into one of the enumerated "best interest" factors, but were properly considered by the court under the catch-all "all relevant factors" provision in R.C. 2151.414(D)(1).

{¶8} Regarding Mother's drug addiction, the children were first placed in the interim custody of HCJFS when Mother was admitted to a hospital emergency room due to opiate withdrawl. She has since been uncooperative with HCJFS's efforts to help her manage her addiction. HCJFS has never been able to confirm the type, dosage, and origin of prescription medication taken by Mother. Mother's only treating doctor to testify at trial stated that Mother had had a seven-year history of opioid addiction when she started treatment. Mother did not successfully complete the program, as she was discharged from it because of her deceptive behavior and noncompliance. According to Mother, she immediately found another treating physician, and has since remained in treatment.

{¶9} There was also evidence adduced at trial that Mother associated with drug users, and/or drug dealers. During a traffic stop, while Mother was a passenger in her boyfriend's car, police found xanax, crystal methamphetamine, and suboxone strips on the boyfriend. He was later charged with three felonies.

{¶10} Father has a lengthy criminal record and had been incarcerated for most of the time that the children had been in HCJFS custody. He has been convicted of domestic violence, robbery, theft, and possession of drug paraphernalia, among other crimes.

{¶11} As far as the specific factors listed in R.C. 2151.414(D)(1)(a)-(e), the trial court found that each child's interactions with Mother and Father were problematic. Evidence presented at trial indicated that Mother, who had only supervised visits with her children at the Family Nurturing Center, was unable to manage her children's

4

behavior on her own and often needed assistance from others. Mother rarely missed a visit with her children, but was unable to progress past supervised visitation. Further, Mother had violated court orders by having the children in her home. During this time, her two-year-old child had wandered into the streets alone, wearing only a diaper, and had been discovered by a passer-by, who called the police.

{¶12} Father's relationship with the children was close to nonexistent as Father had been incarcerated during the majority of the time the children were in HCJFS's custody. The children did not visit with him in prison. The children expressed a desire to be in the custody of either Mother or Grandmother. The guardian ad litem, however, recommended permanent placement of the children with HCJFS.

{¶13} The custodial history of the children was somewhat erratic. After HCJFS obtained custody, the children had placements with relatives and in foster care. One of the children had to be placed in a residential facility to address his mental-health issues. The trial court determined that awarding custody to HCJFS was in the children's best interests because they were in need of a legally secure placement, and that a legally secure placement could not be achieved without a grant of permanent custody to HCJFS. As discussed below, this finding was supported by evidence adduced at trial showing that there was not an appropriate alternative placement.

### Placement with Grandmother or C.B.

{¶14} Grandmother, Mother, and Father each contend that Grandmother should have been awarded legal custody of the children. In the alternative, Father and Mother argue that another relative, C.B., should have been awarded custody. These arguments are not persuasive.

{¶15} HCJFS had placed the children with Grandmother after receiving interim custody of them. While Grandmother had custody of the children, she went out of town and left the children in Mother's care for a week. Grandmother was aware that there were court orders in place allowing Mother to have only supervised contact with her children. It was during this time that Mother's two-year-old child was found wandering the streets wearing only a diaper.

{¶16} Mother, Father, and Grandmother argue that other evidence contradicted this version of events, and warrants a reversal of the trial court's judgment concerning Grandmother's custody petition. They point to evidence adduced at trial that Grandmother had not given the children to Mother, but rather had left the children with an HCJFS approved babysitter, and that the babysitter had given the children to Mother. The trial court found this story not credible, as Grandmother had first told authorites that she had been with the children at their aunt's home in Kentucky, before later saying that she had left the children with a local babysitter.

{¶17} Mother and Father next argue that the trial court could have awarded legal custody of the children to another relative, C.B., instead of terminating their parental rights. But C.B. did not move for custody of the children, so the trial court did not have the option of placing the children with her. *Compare In re T.W.*, 1st Dist. Hamilton No. C-130080, 2013-Ohio-1754, ¶ 9 (in a permanent custody appeal, where a third party had moved for custody at the trial level but did not appeal the trial court's denial of her petition, the appellate court could not order that legal custody should have gone to that third party because, among other reasons, it was unclear that the nonappealing third party still desired to have custody of the children).

{¶18} Accordingly, the trial court's judgment is supported by sufficient evidence and, while appellants presented evidence favorable to Mother, Father and

Grandmother, there is no indication that the trial court lost its way in weighing the evidence presented.

### Due Process Argument

{**¶19**}  Finally, Mother and Grandmother contend that Mother was deprived of the guarantee of due process of law when Mother was not given the opportunity to cross-examine the magistrate presiding over the trial who, according to Mother and Grandmother, offered testimony against Mother.  Grandmother does not have standing to raise this argument since she is not alleging that her rights were affected. *See Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27.

{**¶20**}  Because Mother did not raise this argument in the trial court, she has forfeited all but plain error on appeal.  *See Risner v. Ohio Dept. of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 26.  We find no error, let alone plain error.

{**¶21**}  During trial, Grandmother testified that she had required Mother to take a urine screen to test her for drug use before Mother visited with her other children who were not involved in this case.  Grandmother stated that Mother was allowed to spend 30 days with her other children, and that she wanted to be sure Mother was not using. The magistrate subsequently commented, "Just for clarity, I'm the Magistrate on that, and that is not my knowledge that this is true what she's saying, but this is a good time to end."

{**¶22**}  This was not testimony.  The magistrate was simply commenting on the credibility of Grandmother's testimony.  Since the magistrate was the trier of fact, her comment, while unusual, was not prejudicial. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (holding that determining the

credibility of witnesses is primarily for the trier of fact). There was no jury in this case that could have been prejudicially influenced by the magistrate's comment. The remedy, if any were necessary, would have been to recall Grandmother to the stand to elict further testimony explaining why Grandmother believed her testimony to be accurate. However, Mother did not have a right to cross-examine the magistrate. There was no due process violation, and no plain error.

### Conclusion

{¶23} Upon a review of the record, we hold that the "best interest" determination concerning the children is supported by sufficient evidence. *See A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, at ¶ 14-15; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11. And in weighing the evidence presented, there is no indication that the trial court so lost its way as to create a manifest miscarriage of justice warranting a new trial. *See A.B.* at ¶ 16; *Eastley* at ¶ 12. The trial court therefore did not err in terminating Mother's and Father's parental rights, or in denying Grandmother's petition for custody of the children. Further, Mother's due process rights were not violated when she did not have the opportunity to cross-examine the trial magistrate. Each of the parties' respective assignments of error are overruled.

{¶24} The trial court's judgment is affirmed.

Judgment affirmed.

**CUNNINGHAM**, **P.J.**, and **MYERS**, **J**., concur.

Please note:

The court has recorded its own entry this date.