[Cite as *In re A.H.*, 2020-Ohio-3102.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.H. | : | APPEAL NOS. C-200065 |
| | | C-200086 |
| | : | TRIAL NO. F14-1109X |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 27, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee The Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Adam Hardin*, Assistant Public Defender, Guardian ad Litem for A.H.,

*Cynthia Daugherty*, for Appellant Mother,

*Matthew Miller*, Guardian ad Litem for Mother,

*Roger W. Kirk*, for Appellant Father.

**ZAYAS, Judge.**

{¶1} Appellants, S.W. ("Mother") and A.H. ("Father"), separately appeal from the judgment of the Hamilton County Juvenile Court granting permanent custody of their daughter, A.H., to the Hamilton County Department of Job and Family Services ("HCJFS"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶2} A.H. was born on November 20, 2018, and was found to have acquired a life-threatening illness in utero from her Mother, which required immediate intervention and ongoing treatment.

{¶3} Shortly after A.H.'s birth, HCJFS received a report through 241-KIDS, Hamilton County's hotline to report suspected cases of child abuse or neglect, because Mother had lost custody of her other two children as a result of neglect and dependency.

{¶4} Mother previously lost custody of her then-two and three-year-old children in August 2016. Permanent custody was granted to HCJFS primarily because the juvenile court found that Mother's "profound cognitive delays prevent[ed] her from keeping her children safe." Mother's diagnostic assessment at that time indicated that Mother had been diagnosed with depressive disorder, cannabis abuse, and unspecified mental retardation, and noted that she was suffering from a life-threatening illness. The court's entry indicated that maternal grandmother was a crack cocaine addict and that her use of drugs while she was pregnant led to Mother's cognitive disabilities.

{¶5} Mother's older two children were initially removed because she kept the home in a filthy condition, allowed random people to live in her apartment with her children, and was dating A.H.'s Father, a convicted sex offender, who along with

Mother was suspected of physically abusing Mother's eldest child. Mother was receiving housing and case-management services from Hamilton County Development Disability Services ("DDS") based on her cognitive delays and due to her illness. But the court determined that despite the services from DDS and HCJFS, Mother could not complete her case plan or remedy the problems that caused the children's removal from her home. Additionally, during supervised visitation with the children, Mother needed constant redirection in order to care for them appropriately.

{¶6} The court ultimately found that because Mother could not meet the special needs of her children, both of whom had developmental delays, or meet her own basic needs, such as maintaining the medication regimen to treat her serious illness, the termination of her parental rights was in the children's best interest. Mother's children were subsequently placed in a foster home together.

{¶7} On November 23, 2018, after an assessment worker investigated the report to 241-KIDS, HCJFS took custody of A.H. An order of interim custody was made by agreement a few days later. HCJFS then filed a complaint for permanent custody and moved the court for an order that "reasonable efforts" were not required. Under R.C. 2151.419(A)(2), HCJFS is not required to make reasonable efforts to return a child to the child's home if "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child." Because Mother had her parental rights terminated with respect to her two other children, siblings of A.H., HCJFS's motion was granted.

{¶8} On July 30, 2019, A.H. was adjudicated dependent. The juvenile court found that A.H. lacked parental care by reason of the mental limitations of her parents and that it was in A.H.'s best interest because of her medical needs that

HCJFS assume guardianship. This determination was made based on testimony from HCJFS assessment worker Audrey Laker, who investigated the initial report at the hospital, and on a review of A.H.'s medical records and the judgment entry terminating Mother's parental rights to her two other children.

{¶9} Laker testified to her concerns about how Mother planned to care for her newborn, explaining that Mother struggled to provide details about her care, such as when and how much she should be fed. While Laker did not observe Mother feed A.H., when she asked Mother how much formula she needed to feed her, Mother supposed she would mix 20 ounces of water with 20 ounces of formula. And, when Laker asked Mother how often she needed to bathe the baby, Mother said every two weeks. Laker also mentioned her concerns with how Mother planned to transport A.H. to and from necessary medical appointments and regular check-ups given her limitation in DDS services, which at that time only covered transportation for herself.

{¶10} Laker also testified to her concerns about Father, explaining that he was verbally aggressive and began yelling at Mother in the hospital room as she was crying. Mother described to Laker previous instances of Father's domestic violence towards Mother but said that Father had changed. Mother told Laker that Father was living with her. Substantiated allegations of physical violence by Father against Mother were also detailed in the judgment entry regarding Mother's other two children.

{¶11} Neither Mother nor Father appealed A.H.'s dependency adjudication.

{¶12} A case plan was put in place for Father. Father was required to complete a diagnostic assessment, attend the Fatherhood Program and parenting classes, attend domestic-violence awareness classes, participate in random drug

screens and an outpatient drug rehabilitation, maintain stable housing and a stable income, and regularly visit A.H. at the Family Nurturing Center.

{¶13}  The case proceeded to a trial on a disposition for permanent custody based on HCJFS's complaint.  Hearings were held in July, September, and November 2019, at which Mother, Father, and caseworkers from HCJFS and DDS testified.

{¶14}  On January 31, 2020, the juvenile court concluded that A.H. could not be placed with either of her parents within a reasonable time or should not be placed with either of her parents, and held that it was in the best interest of A.H. to permanently terminate Mother's and Father's parental rights and place A.H. in the permanent custody of HCJFS.  Mother and Father now separately appeal.

## II.  Analysis

{¶15}  In her sole assignment of error, Mother argues that the trial court erred by granting permanent custody of A.H. to HCJFS.  Mother contends that the trial court's findings that it is in A.H.'s best interest to grant permanent custody to HCJFS and that A.H. cannot be placed with her within a reasonable period of time are not supported by the evidence, especially where the entry provided no references to the relevant sections of the Revised Code.

{¶16}  Father asserts two assignments of error.  In his first assignment of error, Father argues that the juvenile court abused its discretion and erred in denying his request for a continuance so that he could be present at the entire trial on the termination of his parental rights.  In his second assignment of error, Father argues that the trial court erred by granting permanent custody of A.H. to HCJFS.  Father contends that the juvenile court's denial of his request for an extension of temporary custody and the juvenile court's finding that A.H. could not be returned to him within a reasonable period of time were not supported by clear and convincing

evidence. He also argues that the juvenile court "failed to specify the statutory section under R.C. 2151.414 for the factual findings supporting its decision." We address Mother's assignment of error and Father's second assignment of error together.

**Standards of Review**

{¶17} In a case involving the termination of parental rights, an appellate court reviews the record and determines whether the juvenile court's decision was supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 46. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Where some competent and credible evidence supports the court's decision, this court will not substitute its judgment for that of the juvenile court. *In re W.W.* at ¶ 46.

{¶18} A review of the sufficiency of the evidence is different than a review of the weight of the evidence. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. To determine whether there was sufficient evidence upon which to terminate parental rights, the court determines whether some evidence exists on each element. It is a test for adequacy and is a question of law. *Id.* at ¶ 15. When conducting a weight-of-the-evidence review in permanent-custody cases, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* at ¶ 16.

**Permanent Custody**

{¶19}   A public children-services agency may seek permanent custody of an abused, neglected, or dependent child in one of two ways.  The agency may either request permanent custody as part of its original complaint, or it may obtain temporary custody and subsequently file a motion for permanent custody.  R.C. 2151.413, 2151.27, and 2151.353(A)(4); *see In re Nibert*, 4th Dist. Gallia No. 03CA19, 2004-Ohio-429, ¶ 13.  In this case, HCJFS requested permanent custody as part of its original complaint, to be determined in the initial disposition.

{¶20}   In order to grant permanent custody in the initial disposition, the trial court must determine: (1) that the child cannot be placed with a parent within a reasonable time or should not be placed with either parent, pursuant to R.C. 2151.414(E); and (2) that permanent commitment is in the best interest of the child, pursuant to R.C. 2151.414(D).  R.C. 2151.353(A)(4); *see In re B.E.M.*, 9th Dist. Wayne No. 04CA0028, 2004-Ohio-4959, ¶ 7-8.  Mother and Father challenge both of these determinations.

{¶21}   In regard to the first requirement, when determining whether a child can or should be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the factors enumerated in R.C. 2151.414(E) exist as to each of the child's parents.

{¶22}   In this case, the juvenile court did not cite any of the statutory subsections—R.C. 2151.414(E)(1) through (16)—within its entry.  However, the juvenile court's detailed recitation of its findings, in which it paraphrased the language of the enumerated factors, in addition to the record, supports at least three factors of R.C. 2151.414(E).  *See In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996) (requiring the *basis* given by the trial court to be an enumerated factor).

7

Accordingly, it is evident that the juvenile court found that A.H. cannot or should not be placed with either parent because: the parents failed to remedy the conditions that caused her removal, pursuant to R.C. 2151.414(E)(1); the parents' ability to properly care for A.H. is precluded by chronic mental-health issues and chemical dependency, pursuant to R.C. 2151.414(E)(2); and Mother had her parental rights terminated as to siblings of A.H., pursuant to R.C. 2151.414(E)(11).

{¶23} The record demonstrates that Mother had her parental rights terminated with respect to her two older children. Because only one factor need apply under R.C. 2151.414(E) to support a court's finding that a child cannot be placed with either parent within a reasonable period of time, and because the juvenile court properly found R.C. 2151.414(E)(11) to apply to the case at bar, we decline to review the court's analysis of the other factors also applicable to Mother. *See In re Wingo*, 143 Ohio App.3d 652, 659, 758 N.E.2d 780 (4th Dist.2001).

{¶24} As to Father, the record demonstrates that Father completed very little of his case plan and remained a heavy marijuana user throughout the case. He failed to complete a diagnostic assessment because he appeared at the assessment under the influence of marijuana and never returned to complete the assessment while sober. He did not attend the Fatherhood Program, parenting classes, domestic-violence awareness classes, or participate in random drug screens and outpatient drug rehabilitation. He testified that he currently smokes marijuana, and previously told HCJFS that he regularly smoked "three or four joints a day."

{¶25} Father also failed to maintain stable housing or a stable income. At the time of trial, in November 2019, he testified that he only worked odd jobs and lived with his wife of nine years and her family, after Mother had "put him out" of her apartment following an incidence of domestic violence for which he was arrested.

8

During the first hearing in July 2019, he was still incarcerated for domestic violence. Father also failed to regularly visit A.H. at the Family Nurturing Center. Though he claimed that he had transportation issues and that HCJFS did not provide him with enough bus fare to get to and from visitation, Father testified that his caseworker regularly gave him six to eight bus fare cards at a time when he asked for them.

{¶26} In regard to the second requirement, the juvenile court found that permanent custody was in the best interest of the child. *See* R.C. 2151.414(D). In making this determination, the juvenile court was required to consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) apply in relation to the parents and child. R.C. 2151.414(D).

{¶27} The first factor deals with personal interactions and interrelationships. A.H. was placed in the interim custody of HCJFS shortly after her birth. Mother did consistently visit with A.H. and was noted to be very caring and loving towards her. An HCJFS caseworker testified that Mother acted appropriately during visits, in that she was able to change A.H.'s diapers and sing to her, but a significant concern was noted on the Family Nurturing Center report regarding Mother's ability to prepare bottles to feed A.H. Father's visits were inconsistent, and he was eventually required

to call the Family Nurturing Center ahead of time due to his poor attendance. A.H. is currently with her siblings in foster care, and the foster parent expressed an interest in adopting A.H., along with her siblings.

{¶28} The second factor concerns the wishes of the child. Because A.H. was only eight months old at the time the permanent-custody hearings began, her wishes were expressed through her guardian ad litem. Her guardian ad litem strongly recommended permanent custody to HCJFS.

{¶29} The third factor concerns the custodial history of the child. A.H. was removed from Mother's and Father's care from the hospital and has been in the same foster home with her siblings for the entirety of the case.

{¶30} The fourth factor is the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. The juvenile court said that it "does not question [Mother's] love for her child, and her almost-perfect attendance at supervised visitation indicates that she wants to be a mother to her child," but went on to state that it cannot ignore Mother's deficiencies. We agree that it is clear from the record that Mother loves her daughter, wants her in her house, and desires to be a good and effective parent. However, it is also clear that Mother's cognitive impairment coupled with her inability to manage her own needs and avoid violent relationships preclude her from providing a safe and nurturing placement for A.H. We emphasize that Mother's cognitive impairment alone does not disqualify her from consideration as a secure placement. *See In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 37 (mental retardation alone does not support the termination of a parent's fundamental right to raise his or her child). It is her impairment in

combination with the record of other objective evidence that supports permanent placement of A.H. with HCJFS.

{¶31} Mother has made a good-faith effort to participate in the services offered through DDS and HCJFS. She was able to temporarily increase her weekly services provided through DDS to help maintain her home, she obtained part-time employment, and she enrolled in part of a parenting class offered through HCJFS. Unfortunately, Mother has been unable to progress significantly in demonstrating her ability to provide for her daughter or herself on a daily basis. A DDS supervisor testified at trial that she had received multiple reports about the condition of Mother's home, and said that several providers for household chores and personal care had stopped their services to Mother because Mother would refuse to maintain her apartment in a suitable condition and would sometimes not let them inside. Audrey Laker testified that upon an unannounced visit to Mother's home, Father was there and appeared under the influence of marijuana, and the home was cluttered and smelled of marijuana and cigarette smoke. Another HCJFS caseworker testified to his concern that Mother's cognitive delays led to her inconsistency in using her DDS services and said that to consider Mother for placement, she would need to have someone there at least 12 to 16 hours per week to help her support A.H.

{¶32} The juvenile court found that Mother lacks a strong support system from within her family to help care for a young child, and Mother admitted as much. Mother also continued to engage in domestically-violent relationships. While she ended her relationship with Father and participated in some domestic-violence awareness classes, she began another violent relationship during the pendency of this case. Mother admitted at trial that the police were called to her home on more than six occasions for domestic disturbances involving her more recent boyfriend. In

11

one instance, Mother's boyfriend choked and hit her. An HCJFS caseworker testified that Mother's continued involvement in violent relationships demonstrated her poor decision-making and was a contributing factor in the agency's move for permanent custody.

{¶33} HCJFS had no concerns with Mother's apartment, which a caseworker considered stable housing, noting that Mother had a crib inside but little other furniture. However, a legally secure permanent placement " 'is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.' " *In re P.*, 1st Dist. Hamilton No. C-190309, 2019-Ohio-3637, ¶ 42, quoting *Matter of K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 87 (4th Dist.2018).

{¶34} The court found that Father was largely absent from A.H., despite engaging in some supervised visitation. This finding is supported by the record, which demonstrates Father's consistent refusal to stop using marijuana and follow his case plan.

{¶35} The fifth factor concerns the applicability of R.C. 2151.414(E)(7) through (11). As explained above, Mother had her parental rights involuntarily terminated as to siblings of A.H, and thus R.C. 2151.414(E)(11) is applicable.

{¶36} Viewing the facts of this case in light of the factors set forth in R.C. 2151.414(D), we find that, while it is clear Mother loves her daughter, it is in A.H.'s best interest that HCJFS be granted permanent custody. While A.H. was bonded with Mother, the record shows that A.H. is also bonded with her siblings and her foster family, who are able to meet all of her needs, including the medication regimen for treating her illness.

**{¶37}** Having thoroughly reviewed the record, we find that sufficient credible evidence supports the juvenile court's decision to terminate Mother's and Father's parental rights and to grant permanent custody of A.H. to HCJFS. Mother's sole assignment of error and Father's second assignment of error are overruled.

**{¶38}** Lastly, in his first assignment of error, Father argues that the juvenile court abused its discretion and erred in denying his request for a continuance at the trial on the termination of his parental rights. We find this assignment to be without merit. There is no request for a continuance in the record. At the second hearing in September 2019, Father's attorney simply explained to the court that Father had transportation issues and could not attend the hearing. He did not move for a continuance of the hearing. Father was able to testify at the next hearing in November 2019, and his attorney represented his interests throughout the trial. *See In re Joseph P.*, 6th Dist. Lucas No. L-02-1385, 2003-Ohio-2217 (a parent's due-process rights are not violated when the parent is represented at the hearing by counsel, a full record of the hearing is made, and any testimony that the parent wishes to present was presented); *Compare In re M/W*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948 (mother's due-process rights were violated when her counsel requested a continuance, which was denied, and mother was unable to present her testimony). Therefore, Father's first assignment of error is overruled.

### Conclusion

**{¶39}** In conclusion, we affirm the judgment of the juvenile court.

Judgment affirmed.

**MOCK, P.J.**, and **MYERS, J.**, concur.

Please note:

13

The court has recorded its own entry on the date of the release of this opinion.

