[Cite as *In re K.P.*, 2024-Ohio-2794.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: P, S, M CHILDREN | : | APPEAL NO. C-240251 |
| | | TRIAL NO. F20-449X |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 24, 2024

*Jon R. Sinclair*, for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paul DeMott*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Pro Kids, Inc.*, and *Donita Parrish*, for the Guardian ad Litem for the Children.

**WINKLER, Judge.**

{¶1}  Appellant mother appeals from the decision of the Hamilton County Juvenile Court granting permanent custody of her four children to the Hamilton County Department of Job and Family Services ("HCJFS").  We find no merit in her sole assignment of error, and we affirm the juvenile court's judgment.

{¶2}  The record shows that on April 29, 2020, HCJFS was granted a telephone ex parte emergency order for K.P., B.S., P.M., and E.M.  The following day, the juvenile court granted interim custody to HCJFS, and HCJFS filed a complaint seeking temporary custody of the children.  The complaint stated that K.P.'s father was not involved in her life.  A.M. was the father of the other three children.  On April 28, 2020, mother and A.M. had engaged in a physical altercation in the children's presence.  A.M. had dragged K.P. by her hair during that altercation.  As a result, he was charged with domestic violence and resisting arrest.  He was incarcerated at the time the complaint was filed.

{¶3}  Additionally, the complaint alleged that on April 29, 2020, police responded to mother's residence because mother and the three youngest children were reported missing.  Mother had contacted K.P. and another child, who subsequently turned 18, and reported "suicidal ideations" involving herself and the children.  She had admitted being depressed and that she and A.M. became combative when they drank alcohol.  Mother was transported to the hospital and admitted as a psychiatric admission.

{¶4}  On October 2, 2020, the children were adjudicated abused and dependent and placed in the temporary custody of HCJFS.  The court ordered mother to complete a diagnostic assessment, engage in substance-abuse treatment, maintain stable housing and income, engage in a domestic-violence assessment, complete drug screens, and visit the children regularly.  It also approved a previously filed case plan.

**{¶5}** The case plan provided for supervised visitation between mother and the four children once a week for four hours and permitted telephone contact between mother and K.P. Mother did not make contact or visit with her children after they were removed from her home. She was incarcerated between November 21, 2021, and October 12, 2022, and no evidence was presented showing that she had made any efforts to contact or visit the children during that time.

**{¶6}** On April 4, 2022, HCJFS filed a motion to modify temporary custody to permanent custody. It alleged that mother was homeless, she had no stable income or housing, she did not visit her children, she had not maintained contact with HCJFS, and she had been arrested several times on harassment charges. It also alleged that mother had made little effort to get sober, and she had not stayed in drug treatment longer than a few days.

**{¶7}** At the hearing on the motion, the caseworker for the family starting in January 2022, testified. He said the case was initiated due to concerns about the parents' drug use and domestic violence, as well as mother's threat to kill her children. Mother was asked to do a diagnostic assessment, drug screens, and complete drug treatment. He received no evidence that she had completed drug treatment. Mother acknowledged to him that she had relapsed in December 2022. In 2023, mother tested positive for opiates, as expected, but also for alcohol, Gabapentin, and benzodiazepines.

**{¶8}** At the time of the hearing, mother was only visiting the two youngest children, E.M. and P.M., who were both very young when they were removed from mother's custody. Neither of them showed any signs of bonding with mother during their visits. K.P. refused to visit her mother, and B.S.'s therapist recommended that visitation with mother be suspended because it was traumatic for the child.

{¶9} The caseworker reported that the foster family that had provided care for all four children intended to pursue adoption. The children had a strong bond with each other and with their foster parents. None of them expressed a desire to return to mother's care. To the contrary, the two oldest children had specifically stated that they did not want to live with mother and they wanted to remain with the foster parents. Two of the children had special needs, but all were thriving under the care of the foster family.

{¶10} Mother testified that at the time of the hearing, she was living with her adult son, G.P., who was a minor at the time of the initial complaint, and his girlfriend. They did not have custody of their own children due to "domestic-violence issues." Mother stated that they would soon be moving to a new residence. Due to a previous eviction, mother needed a co-signer on the lease. David Wallace, whom mother described as a family friend, co-signed the lease. Although by virtue of his name on the lease Wallace was permitted to live in the home, mother stated that he was not living with her. HCJFS was not able to assess whether it was appropriate for him to be around the children.

{¶11} Mother acknowledged that she did not visit her children from November 2021 through October 2022 because she had been in jail and, before her incarceration, because of her drug addiction. She stated that she was visiting the two youngest children. She agreed with the caseworker that the children were bonded with each other, and that the four children should stay together regardless of the outcome of the case. Mother testified that she had been involved in the foster-care system when she was a minor. She said that she had known the foster family since 2004, and she said that she had no issues with the care the foster family had provided.

{¶12} Mother also described her long history of opioid abuse. She stated that she had been using suboxone since 2012 to medically treat her condition. Due to a substantial dental surgery in September 2023, she was prescribed seven different medications, including opioids. She claimed that those drugs resulted in positive drug screens. She also used alcohol at that time.

{¶13} When mother was released from jail in October 2022, she obtained employment at Talbert House as a suicide-prevention specialist. She provided pay stubs and training certificates to prove this employment. She stated that she had recently been promoted. Child support was taken out of her paychecks. She told the court that she was ready to have the children returned to her care.

{¶14} As to the fathers of the children, K.P.'s father was not involved in his child's life. He was absent from the juvenile court proceedings and "has demonstrated no willingness to provide for his child's needs or protection." A.M., the father of the other three, was incarcerated during the proceedings and was released shortly before the permanent-custody hearings. He testified that at that time, he was not able to take care of his children full time, but he supported mother's desire to have the children returned to her due to the positive changes she had made in her life.

{¶15} On December 1, 2023, the magistrate issued a decision granting HCJFS's motion for permanent custody. Mother filed objections to the magistrate's decision. Subsequently, the children's guardian ad litem ("GAL") and court appointed special advocate ("CASA") filed a response stating that they agreed with the magistrate's decision. They added, "[i]t is in the best interest of the children to be placed in the permanent custody of HCJFS, where they can achieve permanency." The juvenile court denied mother's objections, approved and adopted the magistrate's

decision, and awarded permanent custody of the children to HCJFS. This appeal followed.

**{¶16}** In her sole assignment of error, mother contends that the trial court erred by granting HCJFS's motion for permanent custody of the children. She argues that the trial court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. This assignment of error is not well taken.

**{¶17}** We first note that R.C. 2151.414, the applicable statute, was amended effective April 3, 2023. The amendment made only minor changes. Courts should apply the version of the statute in effect at the time the motion for permanent custody was filed. *In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 15. The motion for permanent custody was filed on April 4, 2022, so we apply the version of the statute in effect at that time.

**{¶18}** Former R.C. 2151.414(B) provided that the juvenile court could grant permanent custody of a child to a public children services agency if it found by clear and convincing evidence that (1) permanent custody was in the child's best interest and (2) one of the conditions in former R.C. 2151.414(B)(1)(a) through (e) applied. *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, 230 N.E.3d 1123, ¶ 11. *In re D.V.*, 1st Dist. Hamilton No. C-220423, 2022-Ohio-4602, ¶ 16. The juvenile court found and mother concedes that the children had been in the custody of HCJFS for more than 12 months of a consecutive 22-month period. Therefore, the condition in former R.C. 2151.414(B)(1)(d) was met. Clear and convincing evidence supported this finding. Though the trial court addressed the other conditions in former R.C. 2151.414(B)(1), we need not determine whether any of the other conditions apply. *In re D.V.* at ¶ 16.

**{¶19}** Next, the trial court must determine whether a grant of permanent custody is in the children's best interest. *In re P. & H. Children*, 1st Dist. Hamilton

Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35. That finding can be mandatory or discretionary. Former R.C. 2151.414(D)(1) and 2151.414(D)(2) were "alternative means for reaching the best-interest determination." *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 40.

{¶20} Former R.C. 2151.414(D)(2) set forth a list of circumstances that, if all were found to exist, mandated a finding that permanent custody was in the best interest of the child. *In re R.D.*, 8th Dist. Cuyahoga No. 111798, 2022-Ohio-4519, ¶ 50. If all of the requirements of former R.C. 2151.414(D)(2) are satisfied, the juvenile court must grant the motion for permanent custody. *In re K.T.1*, 2018-Ohio-4312, 121 N.E.3d 847, ¶ 74 (1st Dist.). The juvenile court found that all four of these conditions were met.

{¶21} Under former R.C. 2151.414(D)(2)(b), one of the conditions was that "the child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code." We find no case law specifically addressing how the two-year time period should be calculated. The 12-of-22 condition set forth in former R.C. 2151.414(B)(1) is determined from the date the child enters the temporary custody of the public children services agency until the date the motion for permanent custody is filed. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 24 and 28; *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 42. If we use the same analysis, then the condition was not met. The children entered temporary custody of HCFJS on April 30, 2020. The motion for permanent custody was filed on April 2, 2022, just a few weeks short of two years.

{¶22} But we need not determine the proper method of calculating the two-year time period. Even if we assume that that condition was not met, "[i]f * * * any of

the circumstances enumerated in R.C. 2151.414(D)(2) does not exist, then the juvenile court must proceed to a weighing of factors set forth in R.C. 2151.414(D)(1)" to determine the child's best interest. *In re R.D.* at ¶ 51. The trial court examined the factors in R.C. 2151.414(D)(1) and determined that under those factors, a grant of permanent custody to HCJFS was in the children's best interest.

**{¶23}** Mother takes issue with the trial court's finding that she had abandoned her children. Former R.C. 2151.011(C) stated that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

**{¶24}** The record shows that mother did not contact or visit with the children after they were moved from her home on April 30, 2022, due to her drug abuse. Afterward, she was incarcerated for approximately nine months, during which she did not maintain contact with her children. We agree with the magistrate when she stated, "There is no evidence presented that mother made any efforts to remain in contact with her children, in any manner, during any of these periods of time." Thus, the evidence showed that mother had failed to visit the children for a period longer than 90 days, regardless of when she began contact later. Mother also failed to support the children for over 90 days. Her pay stubs show that she did not begin supporting her children until the summer of 2023.

**{¶25}** Mother further argues that under R.C. 2151.414(D)(1), the trial court did not consider all the relevant factors because it failed to consider and give appropriate weight to her employment at Talbert House and the fact that she had maintained sobriety for a significant amount of time. She argues that under former R.C.

2151.414(D)(1)(d), a legally secure placement could have been achieved by remanding the children to mother with protective orders.

{¶26} The magistrate recognized that mother had engaged in some case-plan services and has made some progress. But the dispositive issue is not whether mother has complied with the case plan, but whether she had remedied the conditions that caused the children to be removed from the home. A parent's compliance with the case plan does not preclude a trial court from awarding custody to a children services agency, as long as it is in the child's best interest. *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, ¶ 39. The evidence showed that mother still has problems with sobriety, housing, and mental health, supporting the magistrate's determination that she had not remedied the conditions that caused the children to be removed from the home, and that she could not provide a legally secure placement for them.

{¶27} Clear and convincing evidence supports the trial court's determination that granting permanent custody was in the children's best interest. Therefore, the evidence was sufficient to support the award of permanent custody to HCJFS. *See In re D.V.,* 1st Dist. Hamilton No. C-220423, 2022-Ohio-4602, at ¶ 18; *In re A.B.,* 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15.

{¶28} Further, after reviewing the record, we cannot hold that the trial court lost its way and created such a manifest miscarriage of justice that we must reverse the judgment and order a new trial. Therefore, the judgment was not against the manifest weight of the evidence. *See Eastly v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *In re P. & H. Children*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 7. We overrule mother's assignment of error and affirm the trial court's judgment.

Judgment affirmed.


**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.