[Cite as *In re H.R.H.*, 2020-Ohio-3160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE: H.R.H.                    :        APPEAL NO. C-200071
                                          TRIAL NO. F-14-386 X

                                 :        *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 3, 2020


*Phyllis Schiff,* for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patrick Stapp*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, Guardian ad Litem for H.R.H.

**CROUSE, Judge.**

{¶1}   Mother appeals from the judgment of the Hamilton County Juvenile Court that terminated her parental rights and placed H.R.H. in the permanent custody of the Hamilton County Department of Job and Family Services ("HCJFS"). For the reasons set forth below, we affirm the juvenile court's judgment.

## I. Factual and Procedural Background

{¶2}   Mother is the natural parent of H.R.H., born in November 2018. H.R.H. tested positive for fentanyl, codeine, amphetamines, methamphetamines, methadone, and morphine at his birth. H.R.H. also suffered from hypoxic ischemic encephalopathy, which required ongoing medical treatments. As a result, H.R.H. remained in the hospital from November 2018 until February 2019.

{¶3}   Prompted by concerns regarding mother's substance abuse, HCJFS filed for permanent custody of H.R.H. on February 1, 2019. HCJFS also filed a "Motion for Determination that Reasonable Efforts Are Not Required" based on the involuntary termination of mother's rights with respect to H.R.H.'s sibling. On February 4, 2019, the magistrate granted interim custody of H.R.H. to HCJFS and determined that HCJFS was not required to make reasonable efforts to return H.R.H. to the home. A couple of months later, the juvenile court adjudicated H.R.H. abused, neglected, and dependent.

{¶4}   Hoping that mother would engage in reunification efforts, HCJFS filed a case plan which included substance-abuse services, mental-health services, and parenting-enrichment services. Mother testified that she attended substance-abuse treatment, submitted to a mental-health assessment, began treatment for her mental-health diagnoses, and visited H.R.H. However, mother's engagement with these services is disputed. Throughout the case, mother never provided HCJFS with

2

any treatment records and she refused to sign releases of information for HCJFS to obtain such records. Mother also inconsistently visited H.R.H., missing some visits and falling asleep during other visits.

{¶5} On September 6, 2019, the magistrate conducted a dispositional hearing on HCJFS's motion for permanent custody. On September 18, 2019, the magistrate granted HCJFS permanent custody of H.R.H. Mother filed objections on the grounds of sufficiency and weight of the evidence. Following arguments on the objections, the juvenile court denied the objections and adopted the magistrate's decision. Mother filed this timely appeal, raising two assignments of error for our review.

## II. Magistrate's Questioning of Witnesses

{¶6} In her first assignment of error, mother argues that the magistrate improperly examined the HCJFS caseworker and failed to rule upon objections raised during the magistrate's examination.

{¶7} Although mother filed objections to the magistrate's decision, she challenged only the sufficiency and weight of the evidence. Because mother did not specifically raise this issue in her objections, she waived all but plain error on appeal. Juv.R. 40(D)(3); *In re The H. Children*, 1st Dist. Hamilton No. C-190630, 2020-Ohio-774, ¶ 22.

{¶8} Juv.R. 40(C)(2) authorizes magistrates "to regulate all proceedings as if by the court and to do everything necessary for the efficient performance of those responsibilities, including * * * [p]utting witnesses under oath and examining them."

{¶9} In *In re Miller*, 109 Ohio App.3d 455, 672 N.E.2d 675 (2d Dist.1996), the Second District Court of Appeals examined the magistrate's scope of authority under Civ.R. 53(C)(2)(c)—the analogous civil rule. The court drew a line between

3

acting as an advocate and eliciting information. "Undoubtedly, that rule does not contemplate that a magistrate may act as an advocate in examining witnesses." *Id.* at 458. "However, a magistrate may examine witnesses to elicit information under that rule." *Id.* Therefore, a magistrate does not exceed her authority under the rules of procedure where she merely seeks to elicit information. *Id.*

{¶10} A review of the transcript in this case reveals that the magistrate did not act as an advocate. The magistrate did not question the HCJFS caseworker in a biased or partial manner. The magistrate's questioning also did not involve "prodding of a witness to elicit partisan testimony." *See State v. Baston*, 85 Ohio St.3d 418, 426, 709 N.E.2d 128 (1999) (analyzing the trial court's interrogation of a witness under Evid.R. 614(B)). Instead, the magistrate asked questions directed toward the clarification and foundation of the caseworker's given testimony. The magistrate questioned the caseworker as to her knowledge of the case and the records founding her knowledge of the case (but not the contents of the records). When mother objected to a question, the magistrate either overruled the objection or rephrased the question.

{¶11} For example, the magistrate asked the caseworker to clarify her previous testimony regarding mother's history of substance-abuse treatment in the following exchange:

Court: When you said "historically," is that about substance, previous substance abuse treatment? When you – what do you mean by historically?

Caseworker: Historically she's attended the methadone clinic, but --

Court: How did you find out? You're saying before your involvement?

Caseworker: Yes, through their records.

Court:  And what records?

Counsel for mother:  And if that's the case, Your Honor, I would object to hearsay.

Court:  Well, I'm not asking her anything about what was in the records.  I'm just asking what records she saw.

Counsel for mother:  But those are the records she's using to inform her answer today, which is hearsay.

{¶12}  After further argument over the objection, the magistrate rephrased the question and asked the caseworker:  "Were the records that you have, that you have consulted, which your previous answer was based on, were they [HCJFS] records?"  When the caseworker replied in the affirmative, the magistrate stated, "Okay. I'll just leave it at that."  Thereafter, counsel for all parties were permitted to reexamine the caseworker regarding any issues raised by the magistrate's questioning.  Each time counsel for mother subsequently raised a similar objection, the magistrate heard the objection on the record but allowed the caseworker to answer.

{¶13}  Based on the foregoing, the magistrate's questioning of the HCJFS caseworker did not rise to the level of inappropriate advocacy, and thus, did not exceed the authority granted under Juv.R. 40(C)(2).  Mother's first assignment of error is overruled.

### III.  Sufficiency and Weight of the Evidence

{¶14}  In her second assignment of error, mother argues that the juvenile court erred by granting permanent custody of H.R.H. to HCJFS.  Although the juvenile court made the appropriate findings, mother contends that these findings were based upon insufficient evidence or against the manifest weight of the evidence.

5

**{¶15}** A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. In reviewing a sufficiency challenge, we must determine if the juvenile court had sufficient evidence before it to satisfy each element. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. In reviewing a manifest-weight challenge, we must examine the record and determine whether the evidence on each element satisfies the clear-and-convincing standard. *Id.*

**{¶16}** Under R.C. 2151.414(B), the juvenile court may grant a motion for permanent custody if it finds that permanent custody is in the best interest of the child and that one of the five conditions set forth in R.C. 2151.414(B)(1) applies.

1. R.C. 2151.414(B)(1)

**{¶17}** As it relates to this appeal, R.C. 2151.414(B)(1) requires a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. *See* R.C. 2151.414(B)(1)(a). To make such a finding, the juvenile court must look to R.C. 2151.414(E). If the court determines that one of the R.C. 2151.414(E) factors exists, then the court must find that the child cannot or should not be placed with his parents under R.C. 2151.414(B)(1)(a).

**{¶18}** After considering the evidence, the juvenile court concluded that three R.C. 2151.414(E) factors applied to mother. First, the court found that one of mother's other children, H.R.H.'s sibling, had been placed in the permanent custody of HCJFS in 2017. *See* R.C. 2151.414(E)(11). Mother does not dispute this finding. Therefore, mother had the burden to show that she could provide a legally secure permanent placement and adequate care for H.R.H. *In re E.S.*, 1st Dist. Hamilton

Nos. C-100725 and C-100747, 2011-Ohio-586; *In re C.M.*, 1st Dist. Hamilton No. C-150365, 2015-Ohio-3971.

{¶19} The juvenile court determined that mother failed to meet this burden, despite her assurances. The entirety of mother's case was presented through her own self-serving testimony. Mother testified that she began substance-abuse treatment approximately seven months into her pregnancy with H.R.H. Mother testified that she remained in treatment and took methadone daily. Mother also testified that she engaged in mental-health treatment. According to mother, she attended weekly one-on-one counseling and group therapy. Mother stated that she was in the process of obtaining medication for her mental-health diagnoses at the time of trial. Mother further testified that she had stable income and housing.

{¶20} Despite her severe chemical dependency and mental-health diagnoses, however, mother failed to provide any records from her treatment providers. Mother did not submit any evidence regarding whether she had maintained sobriety, and whether her conditions had improved to where she could care for herself and H.R.H. In fact, mother admitted that she continued to use substances while in treatment during her pregnancy with H.R.H. Mother also stated that she was not taking any medication at the time of trial. Under these circumstances, clear-and-convincing evidence supports the juvenile court's determination that mother failed to prove that she could provide a secure placement and adequate care for H.R.H.

{¶21} Although the juvenile court's finding under R.C. 2151.414(E)(11) alone satisfied the condition set forth in R.C. 2151.414(B)(1)(a), the court also found that mother failed to remedy the problems that caused H.R.H. to be placed outside the home. *See* R.C. 2151.414(E)(1). HCJFS filed for permanent custody of H.R.H. due to concerns with mother's chemical dependency and parenting abilities. Mother's

history of substance abuse is significant. Prior to 2016, two of mother's children were placed in the legal custody of mother's relatives. In 2017, mother's other child was permanently placed in HCJFS custody due to substance-abuse issues. Less than two years later, H.R.H. was born with fentanyl, codeine, amphetamines, methamphetamines, methadone, and morphine in his system. Mother admitted to using heroin during her pregnancy with H.R.H.

{¶22} As part of its reunification plan, HCJFS asked mother to complete a substance-abuse assessment, a mental-health assessment, and parenting classes. Mother testified that she engaged in substance-abuse treatment and mental-health treatment. However, mother never offered any documentation related to her assessments or her progress in the services. Mother also refused to sign releases of information for such services.

{¶23} The court further found that mother's chemical dependency and mental illnesses satisfied the conditions set forth in R.C. 2151.414(E)(2). In addition to mother's lengthy substance-abuse history, mother presented no evidence regarding the stability of her mental health. Mother testified that she submitted to a mental-health assessment which returned diagnoses for Bipolar Types 1 and 2, PTSD, depression, and anxiety. Mother testified that she was undergoing treatment for her diagnoses at the time of trial. However, mother did not submit any records regarding her treatment and she refused to sign releases of information for such records.

{¶24} Based on the foregoing, clear-and-convincing evidence supports the juvenile court's determination that H.R.H. could not and should not have been placed with mother under R.C. 2151.414(B)(1)(a).

2. Best Interest of the Child

{¶25} In determining the best interest of the child, the juvenile court must consider all relevant factors, including, but not limited to: (a) "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers"; (b) "[t]he wishes of the child"; (c) "[t]he custodial history of the child"; (d) "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and (e) "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."  R.C. 2151.414(D)(1).

{¶26} In this case, the juvenile court walked through each of the R.C. 2151.414(D)(1) factors and documented sufficient evidence that granting permanent custody to HCJFS was in H.R.H.'s best interest.  With respect to the child's interaction and interrelationship with others (R.C. 2151.414(D)(1)(a)), the court found no evidence that H.R.H. was bonded with mother.  Notably, H.R.H. had never been in mother's exclusive care.  H.R.H. remained in the hospital for two months after his birth, and he was discharged into the interim custody of HCJFS.  Mother consistently attended H.R.H.'s medical appointments and frequently visited with H.R.H.  However, mother missed multiple visits and fell asleep during other visits.

{¶27} With respect to the wishes of the child (R.C. 2151.414(D)(1)(b)), the court found that H.R.H. was too young to express his wishes.  However, the guardian ad litem for H.R.H. recommended an award of permanent custody to HCJFS.

{¶28} With respect to the custodial history of the child (R.C. 2151.414(D)(1)(c)), the court found that H.R.H. had never been in mother's exclusive care.  H.R.H. remained in foster care upon discharge from the hospital.

{**¶29**} With respect to the child's need for legally secure placement (R.C. 2151.414(D)(1)(d)), the court determined that mother could not provide an appropriate placement due to her unaddressed chemical dependency and mental-health needs. The court further found that the alleged father had abandoned H.R.H. No alternative placements—e.g., friends or relatives—came forward to take custody of H.R.H.

{**¶30**} The court also considered the significant medical needs of H.R.H. H.R.H. was born with hypoxic ischemic encephalopathy, which required ongoing medical treatments, and later developed eye problems, which prompted more medical care. H.R.H. also experienced significant developmental delays, such as an inability to crawl or talk, and he was high risk for cerebral palsy. At the time of trial, H.R.H. attended neurology appointments, ophthalmology appointments, and NICU follow-up appointments. He also engaged in physical and occupational therapy.

{**¶31**} Under these circumstances, clear-and-convincing evidence supports the juvenile court's determination that a grant of permanent custody was in H.R.H.'s best interest.

{**¶32**} Mother's second assignment of error is overruled.

### *V. Conclusion*

{**¶33**} For the foregoing reasons, mother's assignments of error are overruled and the judgment of the juvenile court is affirmed.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.