[Cite as *In re S. Children*, 2020-Ohio-3791.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: S. CHILDREN | : | APPEAL NOS. C-200168 |
| | | C-200169 |
| | : | TRIAL NO. F10-272X |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: July 22, 2020

*Phyllis Schiff*, for Appellant Mother,

*Anzelmo Law* and *James A. Anzelmo*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Erica C. Bowen*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Belinda S. Gullette*, Assistant Public Defender, for Appellee Guardian ad Litem.

**MYERS, Presiding Judge.**

{¶1}    Mother and father appeal the trial court's entry granting permanent custody of their children to the Hamilton County Department of Job and Family Services ("HCJFS").  Because the trial court's finding that the children cannot or should not be placed with either parent within a reasonable time was not supported by sufficient evidence, we reverse its grant of permanent custody.

### *Factual and Procedural Background*

{¶2}    Mother and father are the parents of J.J.S. and J.K.S.  In June 2018, HCJFS was granted interim custody of the children after it filed a motion for custody and an affidavit alleging that mother, who previously had her parental rights terminated with respect to a sibling of J.J.S. and J.K.S., was recently charged with two counts of operating a vehicle while under the influence of drugs ("OVI").  Because the children were in the vehicle at the time of the second OVI offense, mother was also charged with child endangerment.  The affidavit further alleged that mother reported that father was physically abusive.  It detailed incidents that mother had described involving abuse by father, including an episode in which father threw a flaming lighter at her, and a separate incident in which father struck her with a vehicle when she attempted to stop him from leaving with J.K.S.

{¶3}    Along with the motion for custody, HCJFS filed a motion for a determination that, because mother previously had her parental rights terminated with respect to a sibling of J.J.S. and J.K.S., it was not required to make reasonable efforts to prevent the continued removal of the children from mother's home or to return the children to mother.  The magistrate issued an order granting interim

custody of the children to HCJFS and granting HCJFS's motion for a determination that reasonable efforts are not required.

{¶4} HCJFS filed a case plan for the family. The case plan indicated that the children were placed with their paternal grandmother. It noted that both mother and father needed to gain insight into appropriate parenting practices, gain an understanding about the dangers of domestic violence, and demonstrate impulse control regarding substance abuse. The case plan required that mother sign all releases of information to begin services and participate in all services. With respect to father, the case plan required that he sign a release of information, participate in a mental-health assessment and engage in individual or family therapy, participate in drug treatment, and comply with random urine screens.

{¶5} J.J.S. and J.K.S. were adjudicated abused, neglected, and dependent. In May 2019, HCJFS filed a motion to modify temporary custody to permanent custody, contending that the children cannot or should not be placed with either parent within a reasonable time and that a grant of permanent custody was in the children's best interest. The children's guardians ad litem filed a joint motion advocating for a grant of permanent custody.

{¶6} At a hearing on the motion for permanent custody, Alyssa Royer, the HCJFS caseworker for the family, testified that HCJFS became involved in this case after mother was charged with OVI when the children were in the car with her. She stated that, at the time of her testimony, mother was incarcerated in a Butler County jail for the OVI offense. Royer testified regarding mother's and father's compliance with the case plan. She explained that mother had completed a diagnostic assessment, which recommended both that mother engage in random drug screens and that mother's behavior be monitored to see if additional substance-abuse treatment was needed. Royer testified that mother tested positive for cocaine in February 2019, but explained that despite the positive test, mother continued to deny

that she had a substance-abuse problem. Royer acknowledged that mother had signed a release of information at Sunrise Treatment Center, but Royer had been unable to make contact with mother's therapist to determine if mother had completed therapy.

{¶7} Father also completed a diagnostic assessment, which recommended that he engage in random drug screens and complete a YWCA assessment due to concerns with domestic violence. Father complied with all requested drug screens, and all screens were negative for drug use. He also completed the YWCA assessment, which recommended that he complete the Transform Program for domestic violence. Royer testified that father initially participated in the program, but that he stopped attending because his work schedule interfered with his participation. Royer was concerned that father had not addressed HCJFS's concerns with domestic violence. She was troubled by this, because despite mother and father's assertion that they were not currently in a relationship, she had seen mother's car at father's home during pop-up visits.

{¶8} Royer testified that father was currently granted supervised visitation with the children, although for a period of time he had been allowed unsupervised visits. Father told Royer that it was difficult for him to attend visitation consistently because of his work schedule. Royer testified that mother had informed her, via a text message sent several months before the permanent-custody trial, that she would not be attending visitation any longer, that she did not want to work with HCJFS, and that she wanted the children to be placed in their father's custody. Royer further stated that mother previously had another child permanently removed from her care.

{¶9} Royer testified that the children were currently living with their paternal grandmother and their aunt. The placement was very stable, and the children's relative caregivers loved them and wished to adopt. She opined that a grant of permanent custody was in the children's best interest.

4

{¶10} Father testified that there was no history of domestic violence in his relationship with mother. He acknowledged that mother had previously obtained a protection order against him, but he explained that she had done so over threats about their house and that no domestic violence had been involved in the incident leading to the protection order. Father testified that he had attended a few of the Transform Program classes, but had been unable to complete the program because of his work schedule. He has an appointment scheduled to begin the program anew, and he explained that attendance would no longer be an issue because his work schedule had changed. Father conceded that he had missed his first scheduled appointment to restart the program due to car troubles.

{¶11} Father currently visits his children once a week for a two-hour period, and the visits go well. Although he and mother are not in a relationship, he speaks with her approximately twice a week. Father testified that if he were granted custody of the children, he would use his mother and sister (the children's current caregivers) for child care. Father testified that he works in construction, and that he makes enough money to support his children.

{¶12} Mother testified remotely from the Butler County jail, where she was incarcerated for an OVI offense. She testified that prior to her incarceration, she had received substance-abuse treatment consistently since December 2015. She explained that she took suboxone as part of her substance-abuse treatment, but denied taking cocaine and disputed her positive drug test. Mother participated in a program in jail that worked on coping skills, relapse prevention planning, and a treatment plan to maintain her sobriety upon her release. She told the court that she had also completed the Women Helping Women program, but clarified that although she had been in a previous relationship that involved domestic violence, there was no domestic violence present in her relationship with father.

{¶13}  Mother explained that she and father are no longer in a relationship, but are good friends and coparents.  She acknowledged that father had obtained a protection order against her in 2016 after she threatened to burn father's house down during a time when they were separated.  She further admitted that she had subsequently obtained a protection order against father in retaliation.  Mother testified that her visits with her children prior to her incarceration had gone well.  Mother denied telling Royer that she no longer wanted to visit with her children or work with HCJFS.

{¶14}  The magistrate granted HCJFS's motion for permanent custody.  Both mother and father filed objections challenging the sufficiency and the weight of the evidence supporting the magistrate's decision.  The trial court overruled the objections.  It found that the children cannot or should not be placed with either parent within a reasonable time and that a grant of permanent custody was in the children's best interest.  The trial court accepted and approved the magistrate's decision and entered judgment granting permanent custody of J.J.S. and J.K.S. to HCJFS.

{¶15}  Both mother and father now appeal.  In two assignments of error, father argues that the trial court failed to consider all statutory factors pertaining to the children's best interest and that the trial court's grant of permanent custody was not supported by clear and convincing evidence.  In a single assignment of error, mother argues that the trial court erred as a matter of law by granting HCJFS's motion for permanent custody.

### Permanent Custody

{¶16} We consider mother's sole assignment of error and father's second assignment of error together, as both assignments of error challenge the sufficiency and weight of the evidence supporting the trial court's grant of permanent custody.

{¶17} Before granting a motion for permanent custody, a trial court must find that a grant of permanent custody is in the children's best interest, and that one of the conditions in R.C. 2151.414(B)(1) applies. *In re H.R.H.*, 1st Dist. Hamilton No. C-200071, 2020-Ohio-3160, ¶ 16.

{¶18} The trial court's grant of permanent custody must be supported by clear and convincing evidence. *Id.* at ¶ 15. Clear and convincing evidence "is evidence sufficient to 'produce in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46, quoting *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. An examination into the sufficiency of the evidence requires this court to determine whether the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re R.M.S.*, 1st Dist. Hamilton Nos. C-190378, C-190386 and C-190405, 2019-Ohio-4281, ¶ 27. When reviewing a challenge to the manifest weight of the evidence, we must review the record to determine whether the trial court lost its way and committed such a manifest miscarriage of justice that its judgment must be reversed. *Id.*

{¶19} Here, the trial court found that, pursuant to R.C. 2151.414(B)(1)(a), the children cannot or should not be placed with either parent within a reasonable time and that a grant of permanent custody was in the children's best interest. R.C. 2151.414(E) sets forth various factors for the trial court to consider when determining whether a child cannot or should not be placed with either parent within

a reasonable time. With respect to mother, the trial court found that, pursuant to R.C. 2151.414(E)(1), mother failed to remedy the problems that led to the children's removal from the home. In support of this finding, the trial court noted that mother was currently incarcerated for two OVI convictions; that both children had been adjudicated dependent more than once due, in part, to mother's substance-use issues; that mother was in denial about her substance-use issues; and that mother had completed services to address the domestic-violence concerns in her relationship with father, but continued to deny the presence of domestic violence in the relationship. The trial court additionally found, under R.C. 2151.414(E)(11), that mother's parental rights were involuntarily terminated with respect to a sibling of J.J.S. and J.K.S.

{¶20} With respect to father, the trial court found that, pursuant to R.C. 2151.414(E)(1), father had failed to remedy the problems that led to the children's removal from the home. In support of this finding, the trial court noted that father had not completed services to address domestic violence.

{¶21} The trial court's findings with respect to mother were supported by clear and convincing evidence. The record supported the trial court's finding that mother previously had her parental rights involuntarily terminated with respect to a sibling of J.J.S. and J.K.S. The record also supported the finding that mother had failed to remedy the problems that led to the children's removal. The children were placed in the care of HCJFS after mother was charged with an OVI while the children were present in the vehicle. And mother tested positive for cocaine during the pendency of this action, but continued to deny any issues with substance abuse.

{¶22} With respect to father, however, we cannot find that clear and convincing evidence supported the trial court's conclusion that father failed to remedy the problems that led to the children's removal from the home. Father's case plan required him to engage in a mental-health assessment, participate in drug

8

treatment, and comply with random urine screens. Royer testified that father complied with all drug screens, and all were negative for drug use. Father also completed a diagnostic assessment, and then subsequently completed the recommended YWCA assessment to address domestic-violence concerns. This YWCA assessment recommended that father participate in the Transform Program for domestic violence. Father attended several classes in this program, but stopped attending due to a conflict with his work schedule. The record indicates that father is scheduled to restart the program and that his work conflict has been eliminated.

{¶23} As the record indicates that father has complied with all recommended services with the exception of completing the Transform Program, which he attended in part and is scheduled to restart, the trial court's finding that father failed to remedy the problems that led to the children's removal from the home was not supported by clear and convincing evidence. The trial court made no other findings with respect to father in support of its determination that the children cannot or should be placed with either parent within a reasonable time.

{¶24} R.C. 2151.414(E) provides that the court shall enter a finding that the children cannot or should not be placed with either parent if it determines that one or more the factors set forth in that section "exist as to *each* of the child's parents." (Emphasis added.) As we have determined that the trial court's entry does not establish the presence of any of the factors with respect to father, we hold that the trial court's finding that the children cannot or should not be placed with either parent within a reasonable time was not supported by sufficient evidence and that, consequently, the trial court erred in granting permanent custody of J.J.S. and J.K.S. to HCJFS.

{¶25} Mother's assignment of error and father's second assignment of error are sustained. Father's first assignment of error in which he argues that the trial court failed to consider all relevant best-interest factors is rendered moot.

### *Conclusion*

{¶26}  Because the trial court's finding that J.J.S. and J.K.S. cannot or should not be placed with either parent within a reasonable time was not supported by sufficient evidence, the trial court erred in granting permanent custody of the children to HCJFS.  We reverse the trial court's grant of permanent custody and remand this cause for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.


**BERGERON** and **WINKLER, JJ.,** concur**.**



Please note:

The court has recorded its own entry on the date of the release of this opinion.